**STATE of Missouri, Respondent,**

v.

**Luke BURNS, Appellant.**

No. 39857.

Missouri Court of Appeals,
Eastern District,
Division Three.

April 17, 1979.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 18, 1979.

Application to Transfer Denied
June 19, 1979.

Stuart A. Cofman, St. Louis, at trial; Robert C. Babione, Public Defender, Charles V. Mostov, Asst. Public Defender, St. Louis, on appeal, for appellant.

Paul Robert Otto, Steven D. Steinhilber, Asst. Attys. Gen., Jefferson City, John D. Ashcroft, Atty. Gen., George A. Peach, Circuit Atty., Maureen Dickman, St. Louis, for respondent.

REINHARD, Presiding Judge.

Defendant Luke Burns was charged by information with robbery in the first degree by means of a dangerous and deadly weapon and armed criminal action. A jury convicted defendant to both charges. Under the Second Offender Statute, the trial court sentenced defendant to fifteen years on the robbery conviction and three years on the armed criminal action conviction, the sentences to run consecutively. Pursuant to a recent Missouri Supreme Court decision, the trial court subsequently set aside the sentences, but upon resentencing, reimposed the same sentences. Defendant appeals.

The evidence adduced at trial reveals the following. On February 15, 1977, Larry Smith was working as an attendant at a service station at 3620 South Kingshighway. At approximately 5:30 that evening, while waiting on a car, Smith noticed a white Dodge with a black vinyl top pull in next to the service station office. A man and a woman alighted from the car and entered the office. When Smith went to the office to serve them, the gentleman asked Smith several questions about various products the station was selling. After answering these queries, Smith then stepped away to deposit some receipts in a cash box, at which time the man stepped over and pressed a gun into the attendant's ribs. The man then forced Smith into the bathroom, told him to lie on the floor, and demanded money. Smith complied, and after tying up Smith, the assailant departed. Smith testified that he had several opportunities to see the man's fact during the entire encounter.

After working himself free, Smith hurried from the restroom to find a waiting customer, who had had the foresight to commit to memory the license number of the white Dodge as it left the station. A subsequent police check of the license number showed Luke Burns to be its registered owner.

On February 17, 1977, the police showed Larry Smith 5 pairs of photographs of possible suspects. Smith picked the photograph of defendant as being the photograph of the man who had robbed him. That evening, Smith also picked defendant out of a line-up conducted at the police station. Defendant was the only individual in the line-up whose photos had been among those shown to Smith earlier in the day. Police had arrested defendant that day as he drove a car carrying the license number reported to the police by the resourceful customer. At trial, defendant offered an alibi defense.

Other facts will be given as necessary in the course of the opinion.

As his first point of error, defendant asserts that the trial court erred in passing before the jury the set of photographs from which Larry Smith had selected defendant's picture, and in allowing the term "mug shots" to be used in reference to these pictures. The activity out of which this

contention arises occurred during the testimony of Larry Smith. The defendant objected to the pictures being shown to the jury because the photographs contained booking numbers, arguably representing evidence of another crime. The court permitted the photographs to be shown to the jury only after the booking numbers on all pictures were covered. The references to the pictures as "mug shots" came from Smith, who twice stated on direct examination that the police showed him "some mug shots." Defendant objected only after Smith's second use of that phrase. At no time did the State denominate the photographs as "mug shots."

■ As to the court's allowing the photographs to be passed before the jury, we find no error. The defendant was challenging the identification made by the victim and was presenting an alibi defense. The objectionable portions were blocked out before the photographs were shown to the jury. Confronted with similar facts, the Supreme Court in *State v. Crossman*, 464 S.W.2d 36 (Mo.1971) ruled that the photographs were admissible. In so holding the court stated that "the introduction of the photographs helped the jury to determine the accuracy or inaccuracy of the identification made by the witness." 464 S.W.2d at 41. See also *State v. Futrell*, 565 S.W.2d 465, 467 (Mo. App.1978), in which this court relied on *Crossman* in upholding a similar presentation of "mug shots" to the jury. The court did not commit prejudicial error in allowing the jury to view these pictures.

■ We also reject defendant's contention that the court erred in allowing Larry Smith to twice use the term "mug shots" while referring to the police photographs shown him. We first note that defendant failed to object when Smith first used the term, and then failed to raise this issue in his motion for a new trial. Therefore, this narrow point may only be considered under the plain error articulated in Rule 27.20(c). *State v. Hamell*, 561 S.W.2d 357, 361 (Mo. App.1977). Under the rule, the court may consider plain errors not effectively preserved for review, when the court deems

that manifest injustice or miscarriage of justice has resulted therefrom. Without condoning the use of the term "mug shots," we do not believe the plain error rule applicable here. Considering the positive and repeated identification of defendant by the victim, the recording by another witness of the license plate found to be registered in defendant's name, and defendant's arrest while driving the vehicle carrying that plate, it becomes readily apparent that no injustice or miscarriage of justice will result from our refusal to invoke the rule in this circumstance. *State v. Ray*, 554 S.W.2d 596, 598 (Mo.App.1977). Moreover, we are not persuaded that the use of the term "mug shots," by the victim only, necessarily indicates the commission of separate crimes, particularly here when used by Smith only in the context of identification and not in reference to another crime. See *State v. Rutledge*, 524 S.W.2d 449, 458 (Mo.App. 1975).

Defendant next urges that the court erred in overruling his motion to suppress identification testimony based on a line-up. Also in this vein, defendant further asserts that Larry Smith's in-court identification was tainted because at trial the state presented to him the photographs shown him on February 17.

■ We will deal first with defendant's second point. We recite the well-established principles that the propriety of identification procedures is to be determined from the totality of the circumstances. The validity of an allegedly tainted in-court identification is to be resolved by considering the presence of an independent basis for the identification apart from the challenged pre-trial identification procedures, the absence of any suggestive influence by others, and positive courtroom identification. *State v. Boothe*, 485 S.W.2d 11, 13 (Mo. banc 1972); *State v. Rutledge*, 524 S.W.2d at 456. Despite Smith's viewing of the photographs before his in-court identification, this identification testimony is unassailable. He testified that he had ample opportunity to view defendant during the robbery and further stated at trial, after his

positive in-court identification, that "I was scared enough that I will never, ever, forget that face." The in-court identification was untainted and admissible.

■ As to the pre-trial identification procedures, there is nothing in the record to suggest any police action which could have made either the photographic identification or the line-up suggestive. As a matter of fact, the photographs of the line-up demonstrates many similar characteristics among the participants. State v. Boothe, 485 S.W.2d at 13. Defendant bases his challenge of the line-up on the fact that defendant was the only one in the line-up whose picture had been among those shown previously to Larry Smith. The only case cited by defendant in support of this theory, Foster v. California, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969), is not controlling of these facts. In that case, Foster, who was six feet, was placed in a line-up with only two other men who were approximately five feet, five or six inches tall. The eyewitness was unsure, and then requested a chance to talk with Foster, which request was granted. Still he was unsure. A week later, the eyewitness viewed another line-up, Foster being the only person who had been a part of the previous line-up. The Supreme Court held that this procedure "so undermined the reliability of the eyewitness identification as to violate due process." 394 U.S. at 443, 89 S.Ct. at 1129.

The circumstances here are inapposite. Smith positively identified defendant's picture when shown the police photographs. At the line-up Smith also positively identified defendant. Although defendant was the only line-up participant whose picture had been shown to Smith, at the line-up other participants shared physical characteristics with defendant.

Looking broadly at the totality of the circumstances, this is not a case of an identification produced by improper suggestion or influence. Considering Smith's opportunity to view defendant during the robbery, a clear basis existed to support the line-up identification, apart from the previous photographic identification. This procedure was not impermissibly suggestive. State v. McIntosh, 546 S.W.2d 756, 758 (Mo.App. 1977). See also State v. Reeder, 436 S.W.2d 629, 631 (Mo.1969). Furthermore, "Initial identification by photograph followed by lineup identification is not a per se violation of a defendant's constitutional rights, . . . and certainly will not require suppression of eyewitness identification where grounds independent of the photograph are shown." State v. Conley, 541 S.W.2d 4, 6 (Mo.App. 1976). We find no impropriety in the procedures followed here.

Defendant's final contention centers on an alleged reference at trial to defendant's criminal record and the action of the court in regard to that reference. While testifying about the course of his investigation of the robbery, Detective Ronald Dodson of the St. Louis Police Department stated, "I made a record check through our files . . . and ascertained Luke Burns did have a prior record with a photo on file." Defendant objected to this statement and requested a mistrial. Defendant then withdrew his request for a mistrial, but requested that the court instruct the witness not to testify about any criminal record defendant may have had. Defendant then stated that he was withdrawing his request for a mistrial. In the presence of the jury, the court then instructed the witness, "Detective Dodson, you will not give any testimony as to any prior records available to you regarding this defendant." Defendant then objected to this statement by the trial court, which then sustained the objection to its own instruction. Upon defendant's request the court again sustained defendant's objection to Dodson's testimony and ordered that anything the court had said "instructing the witness will be disregarded by the jury." The court again asked if defendant was withdrawing his request for a mistrial, to which defendant replied in the affirmative. Defendant now complains that the trial court erred in failing to grant a mistrial on the basis of Detective Dodson's testimony and the trial court's subsequent statement. We cannot agree.

Defendant's contention that the court should have granted a mistrial is emasculated by defendant's withdrawal of his request for a mistrial and his subsequent reaffirmation that he was not requesting a mistrial. The defendant received all the relief he asked for, and cannot now complain of error in not receiving more. *State v. Wendell*, 542 S.W.2d 339, 342 (Mo.App. 1976). Furthermore, we note that the declaration of a mistrial is a drastic remedy, the granting of which rests in the sound discretion of the trial court. On review our function is to determine whether the failure to grant a mistrial reflected an abuse of that discretion. *State v. Csolak*, 571 S.W.2d 118, 125 (Mo.App.1978). Without validating either Detective Dodson's remark or the court's instruction, we find no error in the trial court's refusal to grant the drastic remedy that the defendant stated he was not seeking. *State v. Henderson*, 547 S.W.2d 141, 143 (Mo.App.1976); *State v. Wendell*, 542 S.W.2d at 342.

Judgment affirmed.

GUNN and CRIST, JJ., concur.