**STATE of Missouri, Respondent,**

v.

**Gregory MONTGOMERY, Appellant.**

**No. 40096.**

Missouri Court of Appeals,
Eastern District,
Division Three.

Aug. 21, 1979.

Frank R. Fabbri, III, Asst. Public Defender, 22nd Judicial Circuit, St. Louis, for appellant.

John D. Ashcroft, Atty. Gen., Michael P. Donegan, Asst. Atty. Gen., Jefferson City, for respondent.

GUNN, Judge.

Defendant appeals his first degree robbery conviction. He assigns as error the admission of identification testimony and oral and written incriminating statements made by him. The defendant also attacks the court's refusal to allow him to inquire into the availability of other persons to participate in lineup procedures while allowing the State to comment on the lineup. He also challenges the trial court's refusal to allow his counsel to comment on police failure to process the robbery weapon for fingerprints. We affirm.

On a summer mid-afternoon, 75 year old Mrs. Isabelle Boggs was waiting for a bus in north St. Louis. A man identified as the defendant approached her, stuck a screwdriver against her back and demanded her valuables on pain of death. Mrs. Boggs surrendered her purse to the defendant. The entire episode was witnessed from a nearby automobile by Mr. and Mrs. Will Robinson and their 14 year old daughter, Jodi, who had noticed the defendant approach Mrs. Boggs and had suspected some nefarious activity. After the assault on Mrs. Boggs, the defendant jogged by the Robinsons' auto, faced them and cursed them if they offered aid to the victim. The Robinsons followed the defendant and observed him enter an old model automobile. They took written note of the license plate, reported the incident to the the police and returned to be with Mrs. Boggs to await aid. When the police arrived, Mrs. Boggs and the three Robinsons gave the same vivid description of the defendant: "a negro male, 22, five feet two, 150 pounds, black hair, medium complexion, medium built, beige cap, no shirt, short blue jeans". It was also noticed that the defendant's hair was plaited in corn rows. Shortly thereafter, about six blocks from the robbery, the police officer who had interviewed Mrs. Boggs and the Robinsons, spotted the defendant in an auto bearing the description and license plate number given to him. The defendant was in the auto and matched the exact description given to police. A search of the auto brought forth the screwdriver fitting the description of the robbery weapon and a plastic bus pass holder of the kind which had been in Mrs. Boggs' purse.

Defendant was taken to a police station and placed in a lineup attired as he had been during the robbery, i. e., sans shirt.

Defendant's two companions in the lineup, although black males, were taller than he and both wore shirts; neither had his hair braided. The height differential was emphasized because of defendant's deliberate slouch. One of the lineup participants was the police officer who had initially interviewed the witnesses. Mrs. Boggs and the three Robinsons positively identified defendant as the assailant, and when he was confronted with the identification, the screwdriver and bus pass holder, he gave oral and signed statements admitting the robbery.

Defendant first contends that the lineup was unnecessarily suggestive; that the resulting identification and confessions should have been excluded.

■■■ Although an out of court identification may be unnecessarily suggestive, it is inadmissible only if there is substantial likelihood of misidentification. *Neil v. Biggers*, 409 U.S. 188, 198, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). "*Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1970), teaches that reliability, rather than suggestiveness, 'is the linchpin in determining the admissibility of the identification testimony . . . .' " *State v. Carter*, 572 S.W.2d 430, 435 (Mo. banc 1978). Whether an identification is reliable depends on the totality of the circumstances:

> [T]he factors to be considered in evaluating the likelihood of the misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation. *Neil v. Biggers*, supra, 409 U.S. at 199, 93 S.Ct. at 382; *State v. Carter*, supra.

■ Under the circumstances of this case we need not make any determination as to whether the lineup procedures were so unnecessarily suggestive as to render the identifications of defendant inadmissible. The keystone to admissibility is that the victim and the witnesses were able to identify defendant in and out of court under manifestly reliable circumstances. The witnesses and the victim had an excellent opportunity to view the assailant and study his features; the crime occurred in broad daylight; the assailant's face was about five inches from the victim's for several minutes; the Robinsons watched the defendant for several minutes as he approached and confronted the victim and then departed; and, finally, the defendant looked directly at the Robinsons from a distance of several feet and spoke to them. The Robinsons had a high degree of attention; when they realized a crime was going to occur they pulled their car to the side of the road and watched the defendant confront the victim. The Robinsons' description was detailed and accurate to all points except one, whether the assailant wore a beige cap. The Robinsons and victim were certain in their identification of defendant at the out of court identification proceedings and in court. Finally, the time lapse between the robbery and the lineup was only about two hours.

The legal cornucopia is overflowing with law which supports the admissibility of the in court identification of defendant and under circumstances similar to those here. *State v. Gormon*, 584 S.W.2d 420 (Mo.App. 1979); *State v. McGraw*, 571 S.W.2d 802 (Mo.App.1978); *State v. Radford*, 559 S.W.2d 751 (Mo.App.1977); *State v. Proctor*, 535 S.W.2d 141 (Mo.App.1976); *State v. Arnold*, 528 S.W.2d 164 (Mo.App.1975). *See: State v. Burns*, 581 S.W.2d 590 (Mo. App.1979).

■ The finding that the identification was reliable disposes of the defendant's second point of alleged error that his oral and written statements after the identification should have been suppressed as fruit of an illegal identification procedure. There was no error in their admission.

■ Defendant contends that the trial court erred in allowing the prosecutor to comment on the unavailability of other black males for the lineup after his counsel had been precluded from making comment on the issue. Defendant relies primarily on

the rule that it is improper to comment on testimony that has been excluded. *State v. Connell*, 523 S.W.2d 132 (Mo.App.1975). During the course of the trial the prosecutor had presented testimony that the black officer who initially arrested the defendant and had also appeared in the lineup was "the only other black person in the station that wasn't wearing a uniform". The defendant was prevented from cross-examining as to whether there may have been black persons available for use in the lineup in the police station holdover. In closing argument the prosecutor again made reference to the fact that there was only one non-uniformed black officer in the station, which was the evidence before the court. The defendant's objection, "That's not in the evidence . . ." was overruled. The ruling was proper because the prosecutor's comment was based on facts in evidence— that only one non-uniformed black officer was in the station—not on the evidence that was excluded concerning the availability of other lineup participants among prisoners.

 Defendant's final point relates to the trial court's ruling that his counsel was not permitted to question the officer who had seized the screwdriver regarding whether he had ordered fingerprints taken. He argues that the court's ruling prohibited him from making any relevant inquiry as to the fingerprints. The arresting officer on cross-examination was asked whether he had directed the evidence technician unit to test the screwdriver for prints. An objection to the question was sustained, and the defendant's offer of proof was that he would try to show that no effort had been made to have any prints taken.

The relevance of this line of inquiry as to the police officer is not apparent. The defendant's theory was that careless police procedures combined with the undue suggestiveness as to identity resulted in the misidentification of defendant as Mrs. Boggs' assailant. But the defendant has failed to demonstrate the relevancy of his attempted interrogation of the arresting officer. The mere fact that the particular witness did not request fingerprints would not show the inadequacy of police investigation without some indication that the request could have been honored, or, for that fact, that such request would have been within the realm of his authority in the investigation. The officer's failure to make the request is not dispositive of the issue whether an attempt to secure fingerprints was actually made. The trial court did not abuse its discretion in finding the interrogation without relevance. *State v. Lee*, 556 S.W.2d 25 (Mo. banc 1977). Further, the ruling did not prevent defendant, as he contends, from delving into the fingerprint issue. There is no indication that the court intended such ruling to apply to other qualified witnesses.

Judgment affirmed.

REINHARD, P. J., and CRIST, J., concur.