STATE of Missouri, Respondent,

v.

Mason WALKER, Appellant.

No. 40479.

Missouri Court of Appeals,
Eastern District,
Division Two.

April 28, 1981.

Mary-Louise Moran, Asst. Public Defender, St. Louis, for appellant.

John Ashcroft, Atty. Gen., Jerry L. Short, Asst., Atty. Gen., Jefferson City, for respondent.

GUNN, Presiding Judge.

Appellant was convicted of first degree robbery. Based on our interpretation of *State v. Biddle*, 599 S.W.2d 182 (Mo. banc 1980), holding evidence of polygraph examinations to be inadmissible in a criminal trial, we reversed the conviction and remanded the case for a new trial. On motion of the state, we ordered the case transferred to our Supreme Court "for the purpose of determining whether the holding of *State v. Biddle*, . . . shall be applied retroactively or prospectively only."

On April 6, 1981 in *State v. Walker*, 616 S.W.2d 48 (Mo. banc 1981), the Missouri Supreme Court held that *Biddle* as it applied to the inadmissibility of stipulated polygraph evidence involved procedural change and should be given prospective application only. Thus, there was no error in admitting the stipulated polygraph evidence in this case, and the cause was transferred to this court for issuance of opinion and mandate consistent with the Supreme Court's opinion.

What follows, then, is the reissuance of this court's original opinion in this cause as modified to give effect to the Supreme Court's opinion in *State v. Walker, supra.*

Defendant appeals from his conviction of first degree robbery for which he received a sentence of five years imprisonment. His appeal raises a grand farrago of points for consideration: (1) that the trial judge exhibited bias and prejudice against defendant; (2) the prosecutor was permitted to create an impression that the defendant had remained silent after being advised of his *Miranda* rights; (3) the trial court erred in granting the state protective orders which prevented defendant's in-depth examination of his own witnesses; (4) the in-court and out-of-court identification procedures were faulty, including the improper use of "mug shots"; (5) there was improper corroboration by third parties of identification testimony; (6) defendant's offered instructions regarding weight to be accorded polygraph evidence were erroneously rejected. We affirm.

On June 4, 1977 two women employees of a St. Louis photographic supply store, Jule Fuchs and Mary Lou Davidson, were robbed of the store's receipts by a knife wielding man. After the robbery the two employees viewed a multitude of police photographs but were unable to identify the perpetrator of the crime from them. On July 11, 1977, alone in the store, Ms. Fuchs was again the victim of a robbery by the same person who had robbed her on June 4. Her recognition of the offender was instant. Once more, Ms. Davidson and Ms. Fuchs were shown police photographs and each made an independent identification of the defendant as the robber. A police lineup also resulted in identification of the defendant by the two victims as the June 4 robber and by Ms. Fuchs for the July 11 robbery as well. Defendant was then charged with both robberies.

Prior to trial the defendant voluntarily submitted to a polygraph examination which determined that his answers were deceptive on three of five critical questions relating to the June 4 robbery.

On the June 4 charge, Ms. Davidson and Ms. Fuchs made positive in-court identification of the defendant. The defendant's defense was alibi: that on June 4 he had been locked inside his sister's home; that on July 11 he was visiting relatives in Chicago. Nine relatives and friends from Chicago testified that they had been with or had seen the defendant on or about July 11. Defendant was convicted of the June 4 robbery charge.

■ Defendant's first point on appeal relates to the bias and prejudice of the trial court. The defendant, of course, has a fundamental right to a fair trial with the trial court serving as an impartial arbiter, scrupulously avoiding any conduct which exhibits bias against the defendant. *State v. Haddix*, 566 S.W.2d 266 (Mo.App.1978); *State v. Lewis*, 559 S.W.2d 584 (Mo.App. 1977); *State v. Dodson*, 556 S.W.2d 938 (Mo.App.1977). *See also*: *State v. Tyler*, 587 S.W.2d 918 (Mo.App.1979).

■ Defendant bases his allegation of bias on the following conduct of the trial court:

1. Objections made by the prosecution were sustained; objections made by the defense were not;
2. Requests made by the prosecution were granted; requests made by the defense were not;
3. Courtesy in manner and mode of speech by the court before the jury were afforded the prosecution, (sic) but not the defense.

In support of his contention, defendant has supplied a list of virtually every trial court objection and ruling. We are not persuaded by the numbers. We have carefully reviewed the record to determine whether the trial court acted unfairly toward defendant and do not find sufficient basis to uphold defendant's contention in this regard. The entire course of the trial is no paradigm to follow. Objections by defendant's counsel were fulsome and could be viewed as an effort to bait the trial court into error. Consequently, tempers were somewhat frayed during the lengthy course of the courtroom conflict. Frustration of the defense counsel was apparent. But the fact is that the trial court has great discretion in ruling on the relevance and materi-

ality of evidence. *State v. Wickizer*, 583 S.W.2d 519 (Mo. banc 1979); *State v. Flenoid*, 572 S.W.2d 179 (Mo.App.1978). Without detailing all the objections made or rulings on them, we find no abuse of discretion by the trial court in this case, as their basic thrust related to the materiality or relevance of matters sought to be injected by the defendant's counsel. We find that neither the conduct of the trial court nor its comments directed either to the defense counsel or prosecutor gave rise to an inference that it was so biased against the defendant or his counsel or in favor of the state as to deny defendant a fair trial. *See: State v. Woodward*, 587 S.W.2d 287 (Mo. App.1979). Remarks of the trial court directed to counsel in ruling on the admissibility of evidence are ordinarily not prejudicial. *State v. Sullins*, 582 S.W.2d 732 (Mo. App.1979). They were not here.

▪ Defendant argues that the trial court also displayed its bias by lack of courtesy toward the defense. This was a zealously contested case, with the opposing counsel urgently advocating their positions, and, at times, lapsing into *ad hominem* attacks upon one another. The trial judge displayed considerable patience and restraint throughout the trial and his efforts to retain control were not an abuse of his discretion nor was there a manifest injustice to defendant. *See: State v. Lewis*, 559 S.W.2d at 584.

Defendant's second point is twofold: (1) he asserts that the questioning of the arresting officer as to whether defendant was given his *Miranda* warnings was an improper invasion of the right to remain silent; (2) that the trial court erroneously denied defendant the opportunity to elicit from the arresting officer that an exculpatory statement had been made at the time of the arrest.

▪ When arrested the defendant was given his *Miranda* warnings and the arresting officer's testimony was to that effect. The officer was also asked whether the defendant requested a lawyer and responded that he had not. Defendant contends that these circumstances constitute a comment on his right to remain silent. We disagree. Defendant is indeed correct that no comment may be made that an accused has exercised his right to remain silent. *State v. Nolan*, 595 S.W.2d 54 (Mo.App. 1980). But equally true is the fact that it is permissible to ask whether the *Miranda* warnings had been given. *State v. Johnson*, 536 S.W.2d 851 (Mo.App.1976). The record contains nothing which can be interpreted as a direct and certain reference to the defendant's failure to testify or as an incursion on his right to remain silent. Certainly, the testimony of the police officer that he gave *Miranda* warnings cannot be considered so. Nor can the response that the defendant had not requested a lawyer be interpreted in such manner. *See: State v. Hodges*, 586 S.W.2d 420 (Mo.App.1979).

▪ Defendant's reliance on *State v. Lamb*, 468 S.W.2d 209 (Mo.1971), is misplaced. In *Lamb*, the trial court did not permit a response to the question as to whether the defendant had requested a lawyer after being given his *Miranda* warnings, but a mistrial was not granted. Finding no violation of the defendant's rights, the Supreme Court affirmed Lamb's conviction. Defendant in this case seeks to project *Lamb* into a holding that an accused may not be asked if he has requested a lawyer. *Lamb* does not so hold. We find that the question by the prosecutor in this instance does not contain a direct or certain comment on defendant's right to remain silent, nor does it impinge upon his rights. While it is not reversible error in this particular instance, the question as posed is an unnecessary flirtation with a violation of defendant's fifth amendment rights.

▪ In cross examining the arresting officer, defendant's counsel sought to draw from him an exculpatory statement made by the defendant as to why he did not have the need of an attorney. The inquiry was not permitted, although on his direct examination defendant did fully explain why he had not requested legal counsel. The trial court's ruling was not error, for the information which defendant's counsel sought on cross examination was a self-serving out-of-

court statement which was not part of the *res gestae*. As such, the testimony was not admissible. *State v. Nelson*, 459 S.W.2d 327 (Mo.1970); *State v. Parks*, 576 S.W.2d 751 (Mo.App.1979). Nor was the statement sought for impeachment purposes, which would have made it relevant. *Id.* at 752.

Defendant next complains that the trial court erroneously granted the state protective orders or sustained objections which precluded his counsel from presenting to the jury the following testimony: that defendant's witnesses were put to substantial expense and loss of wages in travelling from Chicago to testify; that his relatives had not been able to raise funds for his bond.[1] Defendant also complains that his counsel was unable to show that defendant's son became emotionally upset and cried when he had given a written statement to the prosecuting attorney. Nor was he allowed to question the arresting officer on direct examination regarding statements made by the defendant and his sister at the time of his arrest. Again, no error occurred. Rulings on evidence of travel and bond expense went to its relevance, and the trial court's action on that evidence was not an abuse of discretion. *State v. Wickizer*, 583 S.W.2d at 524. *See also: State v. Edwards*, 588 S.W.2d 182 (Mo.App.1979). The emotional state of defendant's son had no bearing on his written statement. His in-court testimony was fully corroborated, and his testimony was not impeached. The testimony sought from the arresting officer on direct examination called for inadmissible hearsay. *State v. Nelson*, 459 S.W.2d at 332; *State v. Parks*, 576 S.W.2d at 752.

Defendant charges that he was impermissibly hampered in his right of direct examination. Cases cited by him in support of his position, *e. g., Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973) and *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), deal with cross examination. The limitations imposed dealt with direct examination—an unimportant distinction here. But it is clear that the questions which defendant's counsel sought to ask would have unnecessarily invited objectionable and inadmissible answers. The trial judge did not abuse his discretion in not allowing the questions to be asked. The trial court's orders did not unwarrantedly prejudice the defendant.

Defendant suggests that the in-court and out-of-court identification procedures were maculated and should have been suppressed. The victims identified the defendant unhesitatingly and unequivocally in a police lineup and in court. Both victims testified that they had ample time to study defendant in the daylight robbery of their store. In the July 11 episode Ms. Fuchs immediately recognized defendant before his announced intention to rob the store a second time. Defendant was not disguised, nor was there any impediment to the victim's view of him as the robbery was carried out. A substantial independent source of identification existed irrespective of any possible blemish of in-court and lineup identification procedures which was sufficient to overcome any tainted procedures. *State v. Jackson*, 594 S.W.2d 623 (Mo.1980); *State v. Morgan*, 593 S.W.2d 256 (Mo.App. 1980). Basis for the identification was manifestly reliable under the circumstances here. *State v. Montgomery*, 588 S.W.2d 80 (Mo.App.1979).

Furthermore, we cannot find that the identification procedures were unduly suggestive. The testimony of the two victims and the arresting officer was that each witness independently identified the defendant's photograph and picked him out of the lineup. Defendant suggests that as the last group of photos consisted of the pictures of only seven individuals the procedure was unnecessarily suggestive. The showing of a single photograph to a witness is not by itself evidence of suggestiveness. *State v. Greenlaw*, 593 S.W.2d 641, 643 (Mo.

---

1. The theory regarding the lack of bond was that if defendant had in fact committed the robberies, he would have had money to pay for the bond. The fact he had no bond money—so syllogizes defendant—proves that he could not have robbed anyone.

App.1980). Neither does the fact that the two victims were informed that the lineup would include the man whose photograph had been identified avail defendant on appeal. Again, this is not suggestive of the defendant, as the other participants in the lineup tableau shared physical characteristics with him. *State v. Burns*, 581 S.W.2d 590, 594 (Mo.App.1979); *State v. Conley*, 541 S.W.2d 4, 6 (Mo.App.1976).

▇ The state introduced a police photograph of defendant with photographs of other individuals which had been displayed to the victims. Defendant asserts that the use of the "mug shots" implanted in the jury's mind that defendant had prior criminal involvement, even though the police lettering had been blocked out. This precise point was raised and rejected in *State v. Lorenze*, 592 S.W.2d 523 (Mo.App.1979), and *State v. Irvin*, 590 S.W.2d 699 (Mo.App. 1979), holding that mug shots were neutral and without indication of prior criminal activity. *See also: State v. McMillan*, 593 S.W.2d 629, 632–33 (Mo.App.1980).

▇ Next, defendant argues prejudicial error in the testimony of the arresting officer as being an extrajudicial identification. During the direct examination of the police officer by the prosecutor, he testified— without objection and without indicating any name—that one of the victims had made an identification from a photo:

Q. [Prosecutor] Did she [victim] identify a photograph?

A. [Arresting officer] Yes, she did. She identified one photograph.

On cross examination, defendant's counsel firmly established defendant's photograph identification:

Q. [Defendant's counsel] Okay. But after it [some information] was taken down, you showed her some pictures and she [victim] made an identification?

A. [Arresting officer] The technician did, and she made an identification.

Q. And would it be a fair statement to say she tentatively identified Mason Walker?

A. No.

Q. That would not be a correct statement?

A. No.

Q. She positively identified him?

A. Yes, and she became hysterical.

Defendant charges as improperly bolstering the identification the later testimony of an arresting officer reading from a police report that the victim "picked out photographs bearing LB No. 16002, and tentatively identified the individual in the photograph as being the person that robbed Fox Photo Company on 6/4/77, and again on 7/11/77." Defendant suggests that *State v. Degraffenreid*, 477 S.W.2d 57 (Mo. banc 1972), prohibits third person corroboration of an identifying witness. But defendant's argument overlooks the fact that his counsel had already established him as the person identified by the victim. Furthermore, the testimony of the arresting officer on his direct examination cannot be considered as an improper extrajudicial identification, as he did not name the defendant as being identified by the victim, except at the urging of defendant's counsel. *State v. Williams*, 587 S.W.2d 618 (Mo.App.1979), is apt in this regard.

Viewing the evidence as a whole, with positive identification of the defendant by the victims under the circumstances present, we find no improper bolstering of the identification testimony. The admission of the corroborative testimony was not error nor an abuse of discretion. *State v. Williams; State v. Timmons*, 584 S.W.2d 129 (Mo.App.1979); *State v. Wright*, 571 S.W.2d 734 (Mo.App.1978). Nor was there any manifest injustice to defendant by its admission. *State v. McMillan*, 593 S.W.2d at 634.

▇ Defendant declares that the trial court erred when it refused to give any of his three offered non-MAI–CR instructions regarding the polygraph examination. The results of the examination were admitted pursuant to a pre-test stipulation—a procedure which has been interpreted as being permitted in Missouri. *State v. Fields*, 434 S.W.2d 507 (Mo.1968); *State v. Hughes*, 594 S.W.2d 630 (Mo.App.1980); *State v.*

*Stowers,* 580 S.W.2d 516 (Mo.App.1979); *State v. Scott,* 570 S.W.2d 813 (Mo.App. 1978); *State v. Ghan,* 558 S.W.2d 304 (Mo. App.1977); *State v. Roberts,* 547 S.W.2d 500 (Mo.App.1977); *State v. Faught,* 546 S.W.2d 515 (Mo.App.1977); *State v. Mick,* 546 S.W.2d 508 (Mo.App.1976). Now, under *State v. Biddle,* 599 S.W.2d at 191, polygraph evidence is inadmissible, in spite of stipulations to the contrary, for lack of scientific reliability. But, as previously noted, *Biddle* involves a procedural change and is to be given prospective application only. As stated in *State v. Walker,* 616 S.W.2d 48 (Mo. banc 1981) at 49, regarding the facts of this case: "[t]here was no error in admitting the stipulated polygraph evidence in this case because such was properly admissible under the rules of evidence being followed at the time of trial of the case."

Judgment affirmed.

STEPHAN and PUDLOWSKI, JJ., concur.