STATE of ·Missouri, Respondent,

v.

Robert Earl MILLER, Appellant.

No. 46028.

Missouri Court of Appeals,
Eastern District,
Division Three.

July 19, 1983.

E. Eugene Overall, St. Louis, for appellant.

John Ashcroft, Atty. Gen., Kristie Green, Asst. Atty. Gen., Jefferson City, George R. Westfall, Pros. Atty., St. Louis, for respondent.

CRIST, Judge.

Appeal from a jury conviction for burglary first degree and robbery first degree. Defendant was sentenced as a prior offender to ten years imprisonment for the burglary and twenty years imprisonment for the robbery with the sentences to run concurrently. We affirm.

The jury found defendant, armed with a tire tool, and accompanied by another man, forced his way into victim's home. During the course of the robbery, the two tied victim's hands and feet and ripped off her nightgown. They made off with jewelry, silver and other items.

Defendant's first assertion of trial error is the court's overruling his challenge for cause of venireman Curtis. During voir dire, venireman Curtis stated he had a cousin with the Deputy Sheriff's Department in Jefferson County as well as three other distant cousins involved in law enforcement. None of his relatives had any involvement with defendant's case. When questioned by defense counsel as to whether a policeman's testimony was more or less reliable than that of a lay witness, venireman Curtis responded a policeman might be able to give "greater" testimony based on his relationship to the facts and his ability to present facts.

Thereafter, Curtis gave the following answers:

MR. OVERALL: Let me ask it this way: Do you believe a police officer can make a mistake?

VENIREMAN CURTIS: Yes sir.

MR. OVERALL: Do you believe a police officer could arrest the wrong man?

VENIREMAN CURTIS: Yes sir, I believe he could.

MR. OVERALL: Do you have anywhere in the back of your mind anything concerning police testimony that would make it more believable than the testimony of any other witness?

VENIREMAN CURTIS: I really can't give you an honest yes or no answer on that. I think his testimony should be given as much weight as that of anyone else.

MR. OVERALL: Certainly should. Should it be given any more weight because of his position as police officer.

VENIREMAN CURTIS: I think I would say yes.

(and later)

MR. OVERALL: I anticipate that most of the witnesses that the State calls as witnesses against Robert are going to be police officers. Given your position on the testimony of police officers, can you search your heart and mind and tell me that you can keep an open mind in light of what you believe to be the higher credibility of police testimony and still give this man a fair trial?

VENIREMAN CURTIS: I believe I could, sir.

At the outset we acknowledge defendant is entitled to a full panel of qualified jurors before he is required to make peremptory challenges. *State v. Reynolds,* 619 S.W.2d 741, 749 (Mo.1981). When reviewing the trial court's decision not to discharge a juror for cause we note, "[a]ll doubt concerning the determination of a venireman's qualifications should be resolved in favor of the trial court's ruling because the trial judge is in a far better position to observe the demeanor of the venireman and to evaluate and interpret the venireman's answers as they relate to whether the venireman could be fair and impartial if chosen as a juror." *State v. Murphy,* 610 S.W.2d 382, 389 (Mo.App.1980).

The pivotal question is whether or not Curtis rehabilitated himself after stating a police officer's testimony might be more worthy of belief than that of a lay witness. The trial court found Curtis had rehabilitated himself as defense counsel continued his voir dire examination.

■ Our review of the voir dire examination fails to reveal a clearly expressed doubt by the venireman that he could accord defendant a fair and impartial trial. Accordingly, the trial court did not abuse its discretion in refusing to strike the venireman for cause. *State v. Martin,* 643 S.W.2d 63, 65 (Mo.App.1982).

■ Defendant next claims there was a prejudicial and fatal variance between Instruction No. 6 and the information in lieu of indictment. He states the instruction differs from Count II of the information in that the information states the defendant "... displayed what appeared to be a dangerous instrument," and Instruction No. 6 states that "... in the course of stealing the property, the defendant displayed *or threatened the use of what appeared to be a dangerous instrument.*" (emphasis ours) A variance between the information and an instruction which justifies reversal must be material and prejudicial to the rights of the defendant. *State v. Johnson,* 606 S.W.2d 655, 657 (Mo.1980). It is fatal only where a new and distinct offense is submitted to the jury. *State v. Singleton,* 602 S.W.2d 3, 8 (Mo.App.1980). Here the only variance between the information and the instruction was with regard to whether the defendant merely displayed the tire tool, or displayed *or threatened to use the tire tool.*

The instruction conforms with MAI–CR 2d 23.02 which in turn follows § 569.020.-1(4), RSMo.1978. Section 569.020, RSMo. 1978 which also contains the "displayed or threatened to use" language was cited in Count II of the information in lieu of indictment. In addition, there is supportive evidence of the instruction and its use was mandatory. *State v. Grady,* 577 S.W.2d 930 (Mo.App.1979).

On the issue of possible prejudice stemming from the variance, we note defendant took the stand and testified to the effect that although he could not recall where he was the night of the crime, he was sure he was not at the scene of the crime or in any way involved in the crime.

Plaintiff's final point concerns testimony regarding an aborted attempt to conduct a lineup. At the time of the robbery, defendant had placed over his head a pillow case with holes cut out which permitted victim to observe part of his face. On more than one occasion defendant told victim to be quiet. Defendant was arrested on October 16, 1981, and indicated a willingness to appear in a lineup. Contrary to defendant's motion in limine, which had been denied by trial court, and despite a general objection before the testimony was offered, Officer Baldwin was permitted to conclude why defendant wanted a lawyer. Testimony offered was as follows:

Q. Did you make any effort to have a physical line-up on that day where Mr. Miller would be present and have Miss Obear come and look at it?

MR. OVERALL: Your Honor, may I again object to this line of questioning pursuant to our earlier motion?

THE COURT: Yes. It will be over-ruled.

Q. (by Ms. Carpini) You may answer the question. Do you want me to repeat it?

A. No. We did attempt to conduct a physical line-up that evening.

Q. Were you able to do it?

A. No, we were not.

Q. Why is that?

A. At first earlier in the day we asked Mr. Miller if he would be willing to stand in a physical line-up, he stated he would. We then went to the County Jail to transfer him there and when he found out he was going to be asked to speak in the line-up he requested an attorney be present. The people at the County Jail attempted to get him an attorney as he did not have one but no one at the Public Defender's Office could be located.

Defendant argues the admission of foregoing was a perversion of his right to counsel and constituted unfair comment on his right to remain silent.

■ While it is true that no comment may be made on an accused's decision to exercise his right to remain silent, *State v. Nolan,* 595 S.W.2d 54, 56 (Mo.App.1980) such is not the case here. Prosecutor did not inquire as to whether or not defendant had requested an attorney. The police officer was simply allowed to draw this conclusion in his response to the prosecutor's query. His conclusions were not objected to by defense counsel nor were instructions for the jury to disregard the response or a mistrial requested. *State v. Shaw,* 647 S.W.2d 612, 614 (Mo.App.1983). Even if we were to construe the question as an inquiry into defendant's request for counsel, the court could have found some explanation of the delay in the lineup was relevant in light of defense counsel's attempt to discredit victim's lineup identification of defendant. See, *State v. Wood,* 596 S.W.2d 394, 402 (Mo. banc 1980), cert. den. 499 U.S. 876, 101 S.Ct. 221, 66 L.Ed.2d 98 (1980). While the question might be viewed as an "unnecessary flirtation with a violation of defendant's fifth amendment rights," under this set of facts, it falls short of reversible error. *State v. Walker,* 616 S.W.2d 89, 92 (Mo.App. 1981).

Judgment affirmed.

CRANDALL, P.J., and REINHARD, J., concur.