**STATE of Missouri, Respondent,**

v.

**Warren JOHNSON, Appellant.**

**Warren JOHNSON, Appellant,**

v.

**STATE of Missouri, Respondent.**

No. 66258.

Missouri Court of Appeals,
Eastern District,
Division One.

April 15, 1997.

Ellen H. Flottman, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., David R. Truman, Asst. Atty. Gen., Jefferson City, for respondent.

GARY M. GAERTNER, Judge.

Appellant, Warren Johnson ("defendant"), appeals the judgment of conviction entered by the Circuit Court of the City of St. Louis after a jury found him guilty of one count of robbery in the second degree, RSMo 569.030 (1986). Defendant also appeals the denial of his Rule 29.15 motion for post-conviction relief after an evidentiary hearing. We affirm.

On the evening of April 13, 1993, at approximately 9:45 p.m., defendant and another individual approached Deondrea Anderson ("victim") in the parking lot of the Social Security office at Euclid and Delmar in St. Louis City. Victim had stopped to deposit some paperwork in the night deposit box. She left the keys in the ignition and her three year-old son and seven year-old cousin waiting in the car. As victim was returning to the car, a 1985 Chrysler LeBaron, she noticed the two men approaching from Delmar. Victim quickened her pace and reached the vehicle at the same time as the two men. Victim opened the car door and got in. One of the two men asked her for a light. She responded she did not have a light and started to close the door; however, the man who had spoken stepped between the door and the car. Then the other man approached and asked victim if her name was Kim. Victim answered no and again tried to close the door, but the man grabbed it and held it open. Victim identified this second man as defendant at trial.

As defendant pulled the door open, the other man stepped aside and defendant took his place between the car and the door. At that point, defendant told victim, "Give me your money, bitch, or I'm going to kill you." Victim gave him her purse which was lying next to the driver's seat. Defendant also demanded victim's rings.

After she gave him her jewelry, defendant ordered victim out of the car. Instead of getting out, victim shifted the car into drive and attempted to drive away. The tires spun on the pavement, however, enabling defendant to grab the steering wheel. Defendant then reached in and turned off the ignition.

Victim assured defendant he could have the car and the purse and asked that he not hurt her. She then asked if she could remove the children from the car. At that time, victim's cousin stepped out of the car from the passenger seat. Victim reached into the back-seat to pick up her son, and defendant's companion pulled them both out of the car. Defendant and the other man then drove off in victim's car. Victim was able to stop a passerby and report the robbery to the police.

On April 20, 1993, Corporal William Clayton of the Missouri State Highway Patrol stopped a Chrysler LeBaron for speeding on southbound Interstate 55. Two people were in the vehicle. Clayton asked the driver for his driver's license and registration because the car did not have license plates, but only showed temporary tags. The driver could not produce any identification but told Clayton his name was Gary Gilkey. Defendant, the passenger, identified himself as Dominic Fluwellyn. Clayton discovered no driver's license had been issued in the name Gary Gilkey and, therefore, ran the vehicle identification number through the computer. Clayton learned the car had been reported stolen from St. Louis on April 13. The officer then arrested both the driver and defendant. Corporal Clayton identified defendant at trial as the passenger in the LeBaron on April 20.

After defendant was arrested, Officer Rodney Boyer contacted victim and asked her to view a photographic lineup. Victim did so and recognized defendant as one of the individuals who stole her car. Victim also viewed a live lineup and again identified defendant as one of the perpetrators. Officer Boyer testified he showed victim the photographic lineup and also conducted the live lineup.

The jury found defendant guilty of second degree robbery, and the trial court sentenced him, as a prior and persistent offender, to a term of twenty years in prison. Defendant filed his notice of appeal with this court. Defendant then filed a Rule 29.15 motion for post-conviction relief alleging ineffective assistance of counsel. After an evidentiary hearing, the motion court entered its findings of fact and conclusions of law denying defendant's request for relief, and defendant also appeals that ruling. We have consolidated the two appeals for review.

■ In his direct appeal, defendant contends the trial court erred in overruling his objection to certain questions posed to Officer Boyer by the state concerning defendant's request that his attorney be present at the live lineup. Specifically, defendant objects to the following exchange:

PROSECUTOR: Is the defendant already under arrest and the suspect under arrest at that time of the physical lineup?

BOYER: At the physical lineup, yes.

PROSECUTOR: Has he been read his rights?

BOYER: Has he been given any options with regard to the lineup?

At that point defendant objected, arguing the state was attempting to offer evidence of defendant's invocation of his right to counsel. The prosecutor responded the officer was going to testify to the rights of suspects taking part in physical lineups. The court overruled the objection and, after several questions, the following dialogue took place:

PROSECUTOR: Do you have safeguards extended to the suspect?

BOYER: Pertaining to the lineup itself?

PROSECUTOR: Yes.

BOYER: They are read their rights and advised they may have counsel present.

DEFENSE COUNSEL: I object, continuing objection.

COURT: Yes, objection noted, overruled.

PROSECUTOR: And was that right extended to the defendant in this case?

BOYER: Yes, it was.

PROSECUTOR: Did the defendant in this case exercise that right?

BOYER: Yes, he did.

PROSECUTOR: And did he have an attorney come to represent him?

BOYER: Yes, he did.

■■■ Defendant argues these questions elicited impermissible evidence of defendant's post-arrest silence. It is well-settled in Missouri that a defendant's post-arrest silence or language representing silence cannot be used to incriminate him or her at trial. *State v. Tims*, 865 S.W.2d 881, 885 (Mo.App. E.D. 1993). While it is permissible to inquire as to whether a suspect has been informed of his or her *Miranda*[1] rights, *State v. Walker*, 616 S.W.2d 89, 92 (Mo.App. E.D.1981), no comment may be made on the fact a suspect invoked his or her rights. *State v. Martin*, 797 S.W.2d 758, 764 (Mo.App. E.D.1990). Courts carefully scrutinize evidence pertaining to a defendant's silence or request for counsel in order to ensure no inference of guilt could reasonably be drawn from it. *See State v. Frazier*, 927 S.W.2d 378, 380 (Mo. App.W.D.1996).

■■■ A survey of the case law addressing impermissible comments on a defendant's invocation of his fifth amendment rights reveals the situation arises almost exclusively in the context of police interrogation. *See, e.g., State v. Frazier*, 927 S.W.2d 378, 381–82 (Mo.App. W.D.1996); *State v. Tims*, 865 S.W.2d 881, 884–85 (Mo.App. E.D.1993); *State v. Howell*, 838 S.W.2d 158, 160 (Mo. App. S.D.1992); and *State v. Martin*, 797 S.W.2d 758, 763–64 (Mo.App. E.D.1990). The admission of a defendant's post-arrest silence violates his or her constitutional rights where it is shown the accused invoked said rights in the face of accusation. *Howell*, 838 S.W.2d at 161. Accordingly, "[t]he principles do not apply where a defendant did not stand mute in the face of an accusation because no accusation was made." *Id.* Here, it is evident the questions by the prosecutor could not be construed to reflect on defen-

dant's willingness or unwillingness to talk to the police. Nor did his request for counsel demonstrate defendant stood mute when faced with a charge of guilt which called for an admission or denial, thus implying he was guilty. *See State v. Green*, 798 S.W.2d 498, 503 (Mo.App. S.D.1990).

Defendant relies solely on *State v. Miller*, 655 S.W.2d 797 (Mo.App. E.D.1983). In *Miller*, the defendant had agreed to take part in a physical lineup. *Id.* at 799. However, upon learning he would have to speak at the lineup,[2] he requested he have an attorney present. *Id.* The defendant argued this statement violated both his right to counsel and his right to remain silent. *Id.* at 800. While noting the comment was unnecessary, this Court declined to find reversible error, where it did not appear the state deliberately elicited the statement and where defense counsel failed to object or request any curative instruction or other relief. *Id.* The court further stated that, even assuming the state intended the question as an inquiry into the defendant's request for an attorney, the statement was relevant to explain the delay in conducting the lineup in light of the defense's attempt to discredit the victim's identification. *Id.*

Defendant argues that because the grounds on which the appellate court relied in affirming *Miller* are absent in his case, his conviction must be reversed. While we agree that the instant case does present facts different from those in *Miller*, we disagree that these particular facts require a different result. As in *Miller*, defendant in the case at bar relied on a "misidentification" defense: he attempted to show victim erroneously identified him as one of the robbers. The state countered his defense partly by illustrating the procedures utilized by the police in a lineup to ensure a suspect is treated fairly. Directly following the dialogue challenged by defendant, the state continued:

PROSECUTOR: And did you put the attorney's name on the line-up form?

---

1. *Miranda v. State of Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. The perpetrator of the crime involved wore a mask which covered part of his face; however, he spoke to the victim several times during the course of the offense, telling her to be quiet.

BOYER: Yes, I did.

PROSECUTOR: Did you give him any other options with regard to the line-up?

BOYER: Once they are placed in the room, I ask [sic] defendant where in the line-up he wanted to stand and let him choose.

PROSECUTOR: Where is the person who is going to view the line-up, when you do all this stuff?

BOYER: Normally located on the first floor.

PROSECUTOR: Is that anywhere, where the [witness] could be ... observing what you are doing and who you are talking to when you set the line-up up?

BOYER: No, they can't see anything.

\* \* \* \* \* \*

PROSECUTOR: And the attorney is present during the viewing of the line-up?

BOYER: Yes.

\* \* \* \* \* \*

PROSECUTOR: When Ms. Anderson came up to the line-up, to view the line-up, did she identify the defendant?

BOYER: Yes.

PROSECUTOR: Nothing further.

Thus, when reviewed in context, the questions were relevant to discredit defendant's proffered defense. Moreover, in *Miller*, the defendant spontaneously requested counsel after learning he would not just appear in a lineup, but would be forced to speak at it. When considered in light of the facts of that case, where the offender wore a mask covering much of his face but repeatedly spoke to the victim, the testifying officer's explanation of the defendant's invocation of his rights appears more incriminating, and more closely resembles those cases where a suspect initially agrees to speak to police but then exercises his or her right to remain silent by requesting an attorney. *See Frazier*, 927 S.W.2d at 378. Defendant's accompanying complaint, that the state improperly

emphasized defendant's request for counsel in its closing argument, also lacks merit. A reading of the state's closing makes even more clear that defendant's request for an attorney did not imply he was guilty, but merely emphasized the reliability of victim's identification of defendant. While the state's comments—especially when taken out of context—may have been "an 'unnecessary flirtation with a violation of defendant's fifth amendment rights,'" the comments, when viewed within their full context, do not rise to the level of reversible error. *Miller*, 655 S.W.2d at 800 (quoting *State v. Walker*, 616 S.W.2d 89, 92 (Mo.App. E.D.1981)). Point denied.

Defendant's second point contends the motion court erred in denying his Rule 29.15 motion for post-conviction relief. Defendant's motion alleged ineffective assistance of counsel in refusing to call defendant to testify, in relying on a "misidentification" defense, and in failing to call certain witnesses at trial. The motion court granted defendant a hearing; both defendant and his trial counsel testified. The motion court entered findings of fact and conclusions of law. After a review of the parties' arguments and the legal file, we conclude the motion court's ruling was not clearly erroneous and affirm this issue pursuant to 84.16(b).

Based on the foregoing, the judgments are affirmed.

DOWD, P.J., and REINHARD, J., concur.