**STATE of Missouri, Respondent,**

v.

**Russell BENFIELD, Appellant.**

No. 9728.

Missouri Court of Appeals,
Springfield District.

April 28, 1975.

James F. Ford, Kennett, for appellant.

John C. Danforth, Atty. Gen., Robert M. Sommers, Asst. Atty. Gen., Jefferson City, for respondent.

Before BILLINGS, C. J., and HOGAN and FLANIGAN, JJ.

FLANIGAN, Judge.

Defendant Russell Benfield, charged as a second offender (§ 556.280, V.A.M.S.),[1] was found guilty by a jury of the offenses of burglary and stealing, § 560.110, V.A.M.S. Judgment was rendered accordingly and the defendant received consecutive sentences of eight years for the burglary and four years for the stealing, the court having made the prior conviction findings required by § 556.280(2), V.A.M.S. This court reverses and remands for the reason that certain evidence was improperly introduced by the state.

■ Defendant's first point is that the trial court erred in overruling his motions for acquittal which were filed, respectively, at the close of the state's evidence and at the close of all of the evidence. Both motions challenged the sufficiency of the evidence to support a conviction. At the close of the state's case the defendant did offer evidence and, in so doing, he waived any claim of error as to his motion of ac-

quittal filed at the close of the state's case. State v. Hill, 438 S.W.2d 244 (Mo.1969).

■ In determining the sufficiency of the evidence to support the conviction, this court must view the evidence in the light most favorable to the state, accept all substantial evidence and all legitimate inferences fairly deducible therefrom tending to support the verdict, and reject contrary and contradictory evidence. State v. Petrechko, 486 S.W.2d 217 (Mo.1972). This court must disregard all evidence unfavorable to the state and reject all inferences unfavorable to the state. State v. Summers, 506 S.W.2d 67 (Mo.App.1974). The defendant offered the testimony of himself and other witnesses and thus the submissibility of the case will be determined upon all of the evidence. State v. Sykes, 372 S.W.2d 24 (Mo.1963); State v. Chester, 445 S.W.2d 393 (Mo.App.1969).

An unusual feature of this case is that Roger Benfield, brother of the defendant, testified that he, Roger, committed the burglary and the stealing and that the defendant did not participate. According to Roger, the defendant was asleep in the back seat of defendant's car which Roger had parked near the scene of the burglary shortly prior to committing it. Although the jury may have been impressed by Roger's fraternal spirit, it rejected his claim of sole responsibility.

The information charged that the defendant, on November 1, 1972, burglarized a building owned by Riggs Supply Company and located in Kennett, Missouri, and further charged that the defendant stole therefrom a .38 caliber Smith & Wesson revolver, the property of A. M. Riggs.

Witnesses for the state included Dolph Riggs, III, and three police officers: Jack Davis, Jack Jones, and James Elliott.

Dolph Riggs, III, testified that the building of Riggs Supply Company consists of several warehouses, interconnected. On

---

1. All statutory references are to RSMo 1969, V.A.M.S.

November 1, 1972, in the office part of the building, a .38 caliber Smith & Wesson revolver owned by the witness's father, A. M. Riggs, was kept in a holster bolted underneath a swivel chair at one of the desks. State's Exhibit 1 is that revolver. At 11:30 p. m. on that date, the witness was summoned to the building. On arrival he found Elliott and other officers. The burglar alarm was sounding. On entering the front door the witness noticed that a warehouse door was open and it was apparent that "something was amiss" because the warehouse door normally would have been padlocked from the outside. Entry to the building had been gained through a hole in a large overhead door, the hole having been "knocked out or chopped out." The chair to which the holster was bolted had been overturned and the revolver was missing. Shortly afterwards Davis brought state's Exhibit 1 to the witness. No one had been given permission to break into the building. The witness identified photographs of the overhead door, including one showing pieces of plywood which had been broken out of it.

Jack Davis testified that he and Elliott received a radio message that the burglar alarm was sounding and arrived at the Riggs building between 11 and 11:30 p. m. The two officers drove to the front of the building, where Elliott got out. Davis drove to the back in the patrol car and noticed some tail lights on a vehicle nearby. That vehicle turned into a gin yard and Davis followed in the patrol car. The pursued vehicle became stuck in mud and Davis stopped the patrol car. The defendant was the driver and sole occupant of the pursued vehicle and it was about 50 feet away from Riggs building, moving away from that building, when Davis first saw it. Lying in the center of the front seat of defendant's car was the revolver, state's Exhibit 1. On the back floorboard there were some tools and a pair of gloves, the latter being the "same type as Riggs furnishes their employees." *Davis "placed [defendant] under arrest,* put him in my car and drove around to the front of the building."

Jack Jones identified certain tools which he had found on the back floor of the defendant's vehicle, including a tire tool (state's Exhibit 7) and a hatchet, each of which had blue paint on it, "the same color as the outside of Riggs Supply Company." The witness took the defendant to jail and had the defendant remove his shirt and shoes. There were some wood shavings clinging to the shirt.

James Elliott testified that the shirt worn by the defendant contained wood particles. State's Exhibit 16 consisted of wood particles from the inner part of the overhead door and it contained cloth fibers. The area outside the overhead door is enclosed by a chain link fence topped by three strands of barb wire, and the witness found no evidence of blood on the fence.

The principal witnesses for the defendant were the defendant and his brother, Roger Benfield. At the time of the trial, Roger was serving a prison sentence, having been convicted of an unrelated offense.

Roger testified that he and the defendant had been drinking intoxicants most of the day of November 1, 1972. That evening the defendant "passed out" in the back seat of defendant's car. Earlier in the evening the defendant vomited on his shirt and for that reason had taken it off. Roger, who had been warned of his constitutional rights prior to testifying, stated "I broke into Riggs." He had gained entrance by knocking a hole in the overhead door, using state's Exhibit 7. After Roger gained entrance to the building, the burglar alarm went off. Roger ran to the office, "I was going to get in the desk." A chair fell over and Roger took the revolver. Roger also took a pair of gloves. Roger left the premises rapidly and stated that he cut his hand climbing over the fence and it bled. No blood was found on Exhibit 7 or on the gloves. Roger ran to the car, woke up the defendant, saw lights approaching,

"I did not know whether it was the police or not," and ran to his sister's home located about 200 feet away. Roger was not seen by the officers that night.

Roger testified that he put on the defendant's shirt before committing the burglary because Roger was wearing a white T–shirt and the defendant's shirt was dark colored. When Roger returned to the car, he took the shirt off and the defendant put it on.

The defendant's testimony, in general, was consistent with that of Roger with respect to defendant's drinking and passing out. Defendant stated that the gloves found in his car were not his. He said that after Roger had awakened him, Roger told defendant he had seen some headlights and was going to run. The defendant attempted to drive away and stopped when the officer told him to do so. He had no explanation for the presence of a Yale lock which was found in his car by Officer Davis. The lock was similar to the one removed from a door on the Riggs premises.

From the foregoing evidence it is clear that the Riggs building was in fact burglarized and the revolver stolen from the premises.

"The unexplained possession of property recently stolen in a burglary is sufficient to support a submission of both the burglary and stealing. State v. Cobb, 444 S.W.2d 408 (Mo.1969)." State v. Miller, 499 S. W.2d 496, 499[4] (Mo.1973). "Thus, it was shown that appellant not only was present at the scene with opportunity to commit the crime of burglary and stealing, but he was also seen leaving the scene with stolen property, facts and circumstances which not only prove appellant's guilt but are also inconsistent with his innocence." State v. Matha, 446 S.W.2d 829, 831 (Mo. 1969). See also State v. Kellick, 521 S. W.2d 166 (Mo.App.1975).

Although the jury may have accepted Roger's testimony with respect to the manner in which the offenses were committed, it did not believe that portion of Roger's testimony which exculpated the defendant. The defendant asserts that the testimony of defendant and Roger Benfield "conclusively show that appellant did not commit the offense." However, the credibility of the explanation for defendant's possession of the revolver, state's Exhibit 1, which was recently stolen in the burglary, "is a question of fact for the jury; and if the jury disbelieves it the case stands with his possession unexplained." State v. Denison, 352 Mo. 572, 178 S.W.2d 449, 454[7, 8] (1944). See also State v. Clark, 438 S.W.2d 277, 279[3] (Mo.1969). The evidence was sufficient to support the conviction.

Defendant's second point is that the trial court erred in excluding testimony of five witnesses with respect to statements made to them by Roger. The offer of proof was that if the witnesses were permitted to testify, they would state that Roger told them that the defendant had nothing to do with the Riggs burglary and that the defendant was passed out in the back seat of the car.

The trial court properly rejected the offered testimony for the reason that the state had not introduced any evidence that Roger had made any prior *statement* inconsistent with his trial testimony. It is true that Roger was extensively cross-examined with regard to the details of his testimony, but such cross-examination is not in itself a sufficient predicate for the introduction, for rehabilitation purposes, of prior consistent statements of Roger.

"Absent the introduction of evidence to establish statements contradicting the testimony given by the witness, impeachment resulting from mere cross-examination is insufficient to render admissible prior extrajudicial consistent statements." State v. Fleming, 354 Mo. 31, 188 S.W.2d 12, 16[7] (1945). That language is quoted with approval in McElhattan v. St. Louis Public Service Company, 309 S.W.2d 591, 594[2] (Mo.1958), and State v. Degraffenreid, 477 S.W.2d 57, 63 (Mo. banc 1972). *Mc-*

*Elhattan,* 309 S.W.2d at p. 595, holds that prior consistent statements of a witness, offered for the purpose of rehabilitating the witness, are not admissible in the absence of evidence "tending to establish statements made by the witness, which statements were inconsistent with his testimony at the trial."

■ Defendant's third point is that the trial court erred in failing to declare a mistrial because of certain testimony elicited during the direct examination of Officer Elliott and as a part of the state's case. Elliott had testified that he and Officer Davis went to the Riggs premises on the night of the burglary and inspected the conditions there. The witness took photographs of portions of the premises. After the witness identified the photographs, the following occurred:

"Q  In the process of this investigation did anyone advise Russell Benfield of his constitutional rights?

A  Yes, I did.

Q  Did he make any statements?

A  No.

Q  At that time?    A  No, he did not.

Q  Did he make any statements to your knowledge at any other time?  A  No.

Q  Now, did you obtain any of Russell Benfield's clothing—

MR. FORD: Charlie.

(The following proceedings were had in the presence but out of the hearing of the jury:)

MR. FORD: Your Honor, at this time we would like to object to Charlie bringing out no statements were made, which would seem to indicate to the jury that if he had been innocent he would have made some statement, it has no place in this.

THE COURT: Your objection is sustained, and the Prosecuting Attorney is in-

structed not to elicit that information from any other witness.

MR. FORD: And that the jury be— first, Your Honor, we'd like at this time to ask the Court to declare a mistrial because it's highly prejudicial to come before this jury.

THE COURT: That motion is overruled.

MR. FORD: And the jury be instructed to disregard any such matter.

(The following proceedings were had in the presence and hearing of the jury:)

THE COURT: The jury is instructed to disregard the last question asked of this witness and the last answer given.  You may proceed, Mr. Baker."

Defendant's third point is a valid one and the trial episode on which it is predicated requires reversal and remand. Defendant was under arrest during the period Officer Elliott was describing.

In State v. Stuart, 456 S.W.2d 19 (Mo. banc 1970), the following language appears at page 22:

"The law is established in this state that the silence of an accused while under arrest is not admissible against him because he is under no duty to speak.  State v. Vainikos, Mo., 366 S.W.2d 423, State v. Dowling, 348 Mo. 589, 154 S.W.2d 749; State v. Phelps, Mo., 384 S.W.2d 616.  The cases in which this rule of law has been applied are cases where the accused was asked about the alleged crime or where someone made a statement about the alleged crime in the presence of the accused. See: State v. Battles, 357 Mo. 1223, 212 S.W.2d 753, 757[10].  In the instant case no question was asked of the defendant or statement made in his presence.  Here, by his silence, he failed merely to deny or explain his possession of the property by claiming it as his own when he had an opportunity to do so while under arrest.  *We now hold that an accused's failure to volunteer an exculpatory statement is not admissible as an admission; that it may not*

*be shown that by his silence he failed to deny or explain while under arrest an incriminating fact as to which no question was asked.* See: 22A C.J.S. Criminal Law § 734(1)a, p. 1072. The admission of such evidence constitutes an invasion of an accused's constitutional rights. State v. Battles, supra, 357 Mo. 1223, 212 S.W.2d at 757[9]." (Emphasis added.)

In *Stuart* the Supreme Court reversed and remanded even though the assignment of error was not properly preserved at the trial or in Stuart's motion for new trial. Thus this court need not inquire into the timeliness of counsel's objection in the case at bar. Had there been no objection, the result would be the same.

The trial court's instruction to the jury, "to disregard the last question asked of this witness and the last answer given," was not a sufficient antidote for the damaging evidence improperly injected. State v. Hancock, 451 S.W.2d 6, 9[3] (Mo.1970); State v. Fenton, 499 S.W.2d 813, 816(8) (Mo.App.1973); State v. Fulkerson, 331 S.W.2d 565, 570[1] (Mo.1960); State v. Gray, 503 S.W.2d 457, 463[8] (Mo.App. 1973). The court should have declared a mistrial.

The judgment is reversed and the cause remanded.

All of the Judges concur.