STATE of Missouri, Respondent,

v.

Roger J. ZINN, Appellant.

No. 10539.

Missouri Court of Appeals, Springfield District.

Feb. 17, 1978.

---

Robert W. Richart, Joplin, for appellant.

John D. Ashcroft, Atty. Gen., Paul Robert Otto, Asst. Atty. Gen., Jefferson City, for respondent.

Before STONE, P. J., and HOGAN and FLANIGAN, JJ.

FLANIGAN, Judge.

Charged as a second offender, defendant Roger J. Zinn was found guilty by a jury of burglary in the second degree, § 560.070,[1] and received a sentence of 10 years' imprisonment. Defendant appeals.

Defendant's first "point relied on" is that the trial court erred in failing to sustain defendant's motion for judgment of acquittal at the close of the state's evidence and at the close of all the evidence because the evidence was insufficient to support the verdict.

This contention will be reviewed in light of the rules set forth in *State v. Berry,* 526 S.W.2d 92, 95[1–5] (Mo.App.1975). Having offered evidence at the close of the state's case, defendant waived any claim of error as to his motion of acquittal filed at the close of the state's case. *State v. Benfield,* 522 S.W.2d 830 (Mo.App.1975).

The evidence, viewed in the light most favorable to the state, showed that on Sunday, February 15, 1976, at 7:30 p. m., a silent burglar alarm, located in a building owned by Sutherland Building Materials, a

1. Unless otherwise indicated, all references to rules are to Missouri Rules of Court, V.A.M.R., and all references to statutes are to RSMo 1969, V.A.M.S.

partnership, sounded at the Joplin police headquarters. Two officers responded to the call. The officers observed two men, one of them the defendant, inside the building. Forcible entry had been obtained through a rear door. Inside the building the officers found several power tools, property of the partnership, which had been placed in a "gunny sack." The manager of the building testified that he locked it when he had departed from the premises a few hours previously. He had given no one permission to enter. Defendant and his accomplice were taken into custody as they were leaving the building.

■ The foregoing evidence is sufficient to support the verdict. *State v. Hawkins,* 491 S.W.2d 342, 343[2] (Mo.1973); *State v. Johnson,* 533 S.W.2d 629, 631[2, 3] (Mo.App. 1976); *State v. Williams,* 521 S.W.2d 169, 170[1] (Mo.App.1975). Indeed defendant's brief does not attempt to state in what respect the evidence was allegedly insufficient.

Defendant's first point has no merit.

Defendant's second point is that the trial court erred in denying his motion for a change of venue "in that the pretrial publicity of defendant's unauthorized absence from the county jail and the widely publicized picture depicting him painting a political campaign poster for the incumbent sheriff, all of which became an integral part of a highly contested and controversial political campaign, created bias and prejudice against defendant in the minds of the inhabitants of Jasper County."

The application for change of venue, filed on July 12, 1976, alleged that the inhabitants of the county were prejudiced by reason of publicity accorded by television, radio, and other news media, to defendant's unauthorized absence from the county jail. A hearing on the application was held on October 7, 1976, the morning of the trial.

At the hearing on the application defendant produced the affidavits of ten people. The state made no objection to their production. The affidavits were identical and stated that the affiant was a resident of Jasper County, had no interest in the outcome of the case and it appeared to affiant that as result of pretrial publicity concerning the unauthorized absence of the defendant from the county jail the defendant could not have a fair trial in the county.

Defendant produced only one witness, an attorney who had practiced law a year and a half, doing primarily criminal defense work. This witness mentioned a photograph which appeared in the Carthage Press "showing a picture of a man painting a political sign for the incumbent sheriff." The witness said that the name of the defendant was given in the news summary which accompanied the picture. He said, however, that the photograph showed only the back of the head of the defendant and did not show his face. The photograph itself, which had not been mentioned in the application, was not introduced into evidence at the hearing on the application nor does it appear in the transcript.

The state produced the testimony of seven people, each a substantial citizen of Jasper County, most of whom lived in Joplin where the case was tried. One testified that he had seen the picture and read the caption but the picture did not cause him to form any opinion as to whether the defendant was guilty of burglary. None of the state's witnesses recognized the name of the defendant and their testimony, in essence, was that there was no general feeling of hatred or illwill toward the defendant in the county.

During voir dire examination the prospective jurors were asked if any one of them was acquainted with the defendant or had ever heard of him "in any way, shape or form" and there was no response. At no time during voir dire examination or the trial itself was there mention of defendant's week-long "unauthorized absence" from the county jail which occurred in April 1976, nor was there mention of the sheriff's campaign or the photograph in which defendant appeared.

■ Rule 30.04 and § 545.490 provide that, in a county such as Jasper County, the defendant seeking a change of venue must

prove the truth of his allegations of prejudice by competent evidence and the state is authorized to offer rebutting evidence. When that procedure is followed, the granting of a change of venue is a matter within the discretion of the trial court and its ruling is not to be disturbed on appeal unless an abuse of discretion is demonstrated. *State v. Parcel,* 546 S.W.2d 571, 574[11] (Mo.App.1977). See also *State v. Odom,* 369 S.W.2d 173 (Mo. banc 1963).

■ Defendant has failed to demonstrate that the trial court abused its discretion in denying the application.

Defendant's second point has no merit.

Defendant's third point is that the trial court erred in invoking the Second Offender Act, § 556.280, for the reason that the prior felony conviction, on which the invocation was based, was tainted. The prior conviction involved a plea of guilty to a charge of burglary and stealing. The plea was entered on August 19, 1964, in the Circuit Court of Jasper County and the records of that proceeding show that defendant was then represented by counsel.

Defendant challenges the validity of the prior conviction on two grounds: (a) ineffective assistance of counsel at the time the plea was entered, and (b) remoteness of the prior conviction.

■ The evidence with respect to the prior conviction was sufficient to support the finding of the trial court that the Second Offender Act was applicable. There was no duty on the part of the trial court to make an inquiry into the adequacy of the manner in which defendant was represented by counsel in connection with the prior conviction, or to make a specific finding thereon, the record of the proceeding being regular on its face. *State v. Lasiter* (No. 10477, Mo.App., Springfield District, filed February 3, 1978), —— S.W.2d —— (Mo.App.1978), and authorities there cited.

■ The challenge of remoteness is also invalid. "The Second Offender Act places no time limit within which the previous conviction shall have occurred." *State v. Phillips,* 511 S.W.2d 841, 843[2] (Mo.1974).

Defendant's third point has no merit.

■ Defendant's fourth point is, in essence, that the trial court erred in permitting the prosecutor to cross-examine the defendant with respect to a court martial conviction of defendant, while he was in the armed forces, for the offense of murder. This was error, says defendant, because his counsel had informed the court and the prosecutor that defendant had been pardoned and defendant himself testified that he had been "exonerated."

On direct examination by his attorney defendant said that he served in the armed forces and "I received a letter of commendation until I was court martialed." On cross-examination by the prosecutor defendant admitted that while he was in the service he was convicted of the murder of six Chinese soldiers, received a sentence, and "I served nine years—I served the sentence out." Defendant testified that in 1968 a lawyer in California had told his wife that he had been exonerated but that he had never been so informed.

■ Evidence of defendant's court martial conviction for murder was properly received, under § 491.050, for the purpose of impeaching the defendant. *State v. Himmelmann,* 399 S.W.2d 58, 61[3] (Mo.1966). Generally, in the absence of statute, a pardon does not preclude the use of the conviction for the purpose of impeaching the credibility of a witness. *Gurleski v. United States,* 405 F.2d 253, 266[25, 26] (5th Cir. 1968); *U. S. v. Denton,* 307 F.2d 336, 339[4] (6th Cir. 1962); 81 Am.Jur.2d 584 Witnesses § 579.

■ Rule 609(c) of the Federal Rules of Evidence (28 U.S.C.A.) provides, in pertinent part, that a conviction is not admissible for impeachment purposes if the pardon was based on a finding of innocence. However, the burden is on the party challenging the admissibility of the conviction to demonstrate to the court by appropriate evidence that the pardon was so based. Weinstein's Evidence, United States Rules, Vol. 3, § 609[04]. See also *Gurleski,* supra.

The Supreme Court of California has ruled that evidence of a pardon is more available to a defendant than to the prosecution and that a mere statement by counsel, supported by sworn testimony of the defendant, that the defendant had been pardoned did not preclude the use of the conviction to impeach the defendant. The court pointed out that "the trial court was, of course, not required to believe [defendant's] testimony." *In re Terry,* 4 Cal.3d 911, 921, 95 Cal.Rptr. 31, 39, 484 P.2d 1375, 1382[5–7] (Cal. banc 1971).

Defendant's fourth point has no merit.

■ Defendant's fifth point is that the trial court erred in sustaining the state's hearsay objection to portions of the deposition of a defense witness. The challenged portions have been reviewed by this court. They were hearsay and were not competent under any exception to the hearsay rule. The trial court's ruling was proper. Defendant's fifth point has no merit.

■ Defendant's sixth point is that the trial court erred in failing to sustain defendant's motion to produce, for his inspection, certain gloves found at the scene. The gloves were depicted in state's Exhibit 12, a photograph. The photograph was introduced into evidence but the gloves were not. When the whereabouts of the gloves were discussed between counsel, the prosecutor stated that he had no objection to "bringing in the gloves." Defense counsel stated, "I will waive the gloves. We have seen the picture." Defendant's sixth point has no merit.

■ Defendant's seventh point is that the prosecutor improperly introduced into evidence before the jury certain testimony of the defendant which he had given during the second offender hearing, the latter having been held earlier in the day and outside the presence of the jury. Neither the statement of facts portion nor the argument portion of defendant's brief sets forth what the challenged evidence was. The point has not been preserved for review. *State v. Lewis,* 532 S.W.2d 843, 844[2] (Mo.App. 1975); Rule 84.04(c).

■ Defendant's eighth point is that the trial court erred "in reading the names of the owners of the Sutherland Building Materials partnership to the jury in its verdict-directing instruction," thereby denying defendant a fair trial.

The amended information, on which the case was tried, described the burglarized premises as "a certain building located at 2800 Rangeline, Joplin, Missouri, known as Sutherland Lumber, the property of Sutherland Building Materials, Inc." During the presentation of the state's case, evidence was adduced to the effect that the building was owned by a partnership consisting of John, Herman, Bob, Tom, and Chris Sutherland, d/b/a Sutherland Building Materials. Outside the hearing of the jury and before the state had rested its case, the prosecutor obtained permission of the court to amend the information to show ownership by the partners rather than by the corporation. The only objection made by defense counsel to the amendment was, "it is too late" and "it is unfair."

"The court may permit an information to be amended . . . at any time before verdict or finding if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced." Rule 24.02. Similar amendments of burglary informations, made during the trial, have received appellate approval. *State v. Cobb,* 444 S.W.2d 408, 415[15–16] (Mo. banc 1969) (change in name of corporate owner); *State v. Roberts,* 506 S.W.2d 817, 818[2, 3] (Mo. App.1974) (deletion of name of purported owner and insertion of name of true owner); *State v. McLallen,* 522 S.W.2d 1, 4[5] (Mo.App.1975) (adding the name of a co-owner of property taken and a technical change in the title of the burglarized store).

The trial court did not abuse its discretion in permitting the instant information to be amended. As stated in *Cobb,* supra, the offense charged remained the same after the amendment was made and there is no showing that any substantial right of the defendant was prejudiced in any respect.

Although the argument under defendant's eighth point mentions the amendment, the point itself seems to complain that the trial court erred in correcting the state's principal instruction (Instruction No. 4). Instruction No. 4, as initially read to the jury, stated that the building was "owned by Sutherland Building Materials, Inc." The court realized the mistake and called it to the attention of counsel. Defendant's counsel objected to any correction of the mistake and asked for a mistrial which was denied. The court then amended Instruction No. 4 so as to read: "owned by John, Herman, Bob, Tom, and Chris Sutherland, d/b/a Sutherland Building Materials, a partnership," and read the amended version.

 Defendant has demonstrated no prejudice by reason of the court's correction, during the reading of the instruction, of a mere clerical error. The same situation arose in *State v. Sawyer*, 367 S.W.2d 585, 588[6–8] (Mo.1963). A similar correction of an instruction was made during the reading of it to the jury. The offense was burglary and the instruction was corrected so as to state the name of the owner. The court said at p. 588: "Courts may withdraw or correct an instruction and it is the duty of the court to do so at any time during the trial, especially before the case has been submitted, if upon reflection the same is considered to have been erroneously given."

Defendant's eighth point has no merit.

 Defendant's ninth point has not been preserved for review for the reason that it is a mere abstract statement of law and fails to state briefly and concisely what actions or rulings of the trial court are sought to be reviewed and wherein and why they are claimed to be erroneous. Rule 84.04(d); *State v. Shumate*, 516 S.W.2d 297, 300[8] (Mo.App.1974).

Defendant's tenth point is, in essence, that the trial court erred in refusing to give Instructions A, B, and C, offered by defendant.

 Instruction A was MAI–3.42, a circumstantial evidence instruction. Because this was not a case where the evidence was wholly circumstantial, there being two eyewitness, there was no error in refusing to give Instruction A. *State v. Gotthardt*, 540 S.W.2d 62, 68[8] (Mo. banc 1976).

 Instruction B was a definition of "specific intent." Instruction C was a definition of the word "willfully." Neither Instruction B nor Instruction C is found in MAI–CR. The instructions which were given, and their accuracy and completeness has not been challenged, did not use either of the terms defined by the refused instructions. The trial court did not err in refusing to give Instructions B and C. *State v. Abram*, 537 S.W.2d 408, 411[3, 4] (Mo. banc 1976).

Defendant's tenth point has no merit.

The judgment is affirmed.

All concur.