**STATE of Missouri, Plaintiff–Respondent,**

v.

**Jack Scott HOWELL, Defendant–Appellant.**

**No. 17946.**

Missouri Court of Appeals,
Southern District,
Division One.

Sept. 3, 1992.

Gary E. Brotherton, Columbia, for defendant-appellant.

William L. Webster, Atty. Gen., Elizabeth L. Ziegler, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

SHRUM, Judge.

A jury found the defendant, Jack Scott Howell, guilty of the class C felony of tampering in the first degree, § 569.080.-1(2), RSMo 1986. Because the defendant was a prior offender, the trial court assessed punishment at four years' imprisonment. He appeals; we affirm.

## ISSUES ON APPEAL

The defendant raises two issues on appeal: (1) whether the trial court committed prejudicial error when it denied the defendant's motion for mistrial, a motion based on his claim that one of the prosecutor's questions and the response it elicited from a police officer constituted an impermissible comment on the defendant's exercise of his right to remain silent following his arrest and *Miranda* warning,[1] and (2) whether the trial court committed plain error in giving a jury instruction defining "proof beyond a reasonable doubt" because it allegedly allowed the jury to convict the defendant on a degree of proof below that required by due process.

## FACTS

The sufficiency of the evidence to support the defendant's conviction is not an issue. On April 16, 1990, at approximately 12:15 a.m., witnesses Eaton and Sutterfield

---

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

went to the C & E Auto Sales lot in Salem, Missouri, to look at a boat that was for sale. While there, they saw a man lying beneath a blue Chevrolet pickup truck parked on the C & E lot. As they moved closer to the blue pickup, the man crawled out and he and another man "took off running." Eaton and Sutterfield chased the two men without catching them. Later, Sutterfield found that the front wheels and tires on the blue Chevrolet were missing. As the two unidentified men ran from the car lot, Eaton and Sutterfield also saw a late 1960's model, green and white, long-bed Chevrolet pickup, which had been parked on a street behind C & E Auto, start up and drive away. They could not identify the driver. Immediately Eaton and Sutterfield reported their observations to the Salem Police Department.

At about 12:30 a.m., Salem policeman David Fowler, saw a green and white Chevrolet pickup parked at Gas Plus, a combination convenience store-gas station. Upon inquiry by Fowler, the defendant identified himself as the owner of the green and white pickup. Two other persons, Crist and Sullivan, were with the defendant. The defendant, Crist, and Sullivan told Fowler they had been at Gas Plus for about 30 minutes, but the clerk said it was closer to 10 minutes. Thereupon the defendant was taken into custody and he was advised of his *Miranda* rights. Crist and Sullivan were also taken into custody.

At trial, Crist, an admitted participant in the charged crime, testified that he was with the defendant on the night of April 16 for the purpose of taking the wheels off the truck parked on the C & E lot. He testified that the defendant had told him he had a buyer for "this certain kind of wheels," that the defendant had earlier located a truck with that kind of wheels at the C & E lot, and that the defendant drove Crist and Sullivan to the C & E lot to steal the wheels.

At trial, the following colloquy occurred between the prosecutor and officer Fowler:

Q. (To Fowler) And what did you do at that point in time?[2]

A. I request[ed] Mr. Howell to come outside and talk to me about his pickup.

Q. Did you take him into your custody at that point in time?

A. Yes, sir.

Q. Did you take anyone else into your custody at that point in time?

A. Yes, sir.

Q. Who else?

A. Crist and Sullivan.

Q. In other words, they were not free to leave from your request at that point; is that correct?

A. No, sir.

Q. Did you advise the—Mr. Howell of his rights?

A. Yes, sir.

Q. Of what rights did you advise him?

A. Of the Miranda rights.

Q. *Did Mr. Howell make any statements to you after you so advised him?*

A. *No, sir.* (Emphasis added.)

At this point defense counsel objected, "The state just commented on the defendant's right to stand on his right to remain silent," and moved for a mistrial. The trial court overruled the objection and denied the request for a mistrial, saying, "I don't think he said anything about standing on his rights. He just said no statement was made."

## DISCUSSION AND DECISION

*Post–Arrest Silence*

■ In Point I the defendant urges us to reverse his conviction, arguing that the above quoted question to Fowler and Fowler's answer amounted to an improper comment on the defendant's post-arrest silence as well as his decision whether to testify. He argues that allowing such an impermissible reference over his timely objection violated his rights to remain silent and to

2. In context, the phrase "at that point in time," referred to the next event inside the convenience store after Fowler learned that the defendant was the owner of the green and white pickup parked in front of the store and after he asked the defendant, his companions, and the clerk how long the defendant and his companions had been in the store.

due process of law, as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Article I, §§ 10 and 19 of the Missouri Constitution.

 The law is well established in Missouri that the silence of an accused while under arrest is not admissible against him. *State v. Stuart*, 456 S.W.2d 19, 22[3] (Mo. banc 1970); *State v. Nolan*, 595 S.W.2d 54, 56[2] (Mo.App.1980). The state may not use post-arrest silence either as affirmative proof of a defendant's guilt or to impeach his testimony. *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976); *State v. Mathenia*, 702 S.W.2d 840, 842[3] (Mo. banc), *cert. denied*, 477 U.S. 909, 106 S.Ct. 3286, 91 L.Ed.2d 574 (1986); *State v. White*, 809 S.W.2d 731, 733[2] (Mo.App. 1991). It may not be shown that an accused failed to volunteer an exculpatory statement, nor may it be shown that, by his silence, he failed to deny or explain, while under arrest, an incriminating fact about which no question was asked. *Stuart*, 456 S.W.2d at 22[4]; *State v. Benfield*, 522 S.W.2d 830, 834–35 (Mo.App.1975). The admission of such post-arrest silence constitutes an invasion of an accused's constitutional rights. *Benfield*, 522 S.W.2d at 835.

 Application of the foregoing constitutionally based principles is mandated where the record reveals that a "defendant 'stood mute' or claimed his privilege to remain silent *in the face of accusation*." *State v. Starks*, 459 S.W.2d 249, 252[7] (Mo.1970) (emphasis in original). The principles do not apply where a defendant did not stand mute in the face of an accusation because no accusation was made. *Id.* at 252[8].

Here, the defendant was not asked by Fowler about the crime of tampering nor was anything said by anyone in the defendant's presence about the crime after his arrest and after he was given his *Miranda* warning. As the defendant acknowledges in his brief, after he was taken into custody "the record does not explicitly show that Fowler asked [the defendant] any questions...." Accordingly, this case is governed by the principles enunciated in *State v. Battles*, 357 Mo. 1223, 212 S.W.2d 753

(1948), *Starks*, 459 S.W.2d 249, and *State v. Green*, 798 S.W.2d 498 (Mo.App.1990).

In *Battles*, the defendant was told he was under arrest. He then broke away and ran. The arresting officer pursued the defendant until the defendant fell, after which the officers held him. At trial, the officer, testifying about the arrest, was asked, "Did the defendant make any statement there about anything?" The officer replied, "No, sir." Timely objection was overruled. On appeal our supreme court refused to apply the general rule that the introduction of post-arrest silence was prejudicially erroneous.

> All of the cases where we have held that it was error to prove that the arrested person remained silent were cases where the persons were asked about the alleged crime or where some one made a statement about the alleged crime in the presence of the accused.
>
> In the case at bar, the appellant was not asked about the crime [n]or was anything said about the crime in his presence by any one. The only thing asked him was whether he would lie still, to which he answered in the affirmative, and [he] made no other statement. Certainly, appellant could not be prejudiced under these circumstances.

*Battles*, 212 S.W.2d at 757 [10, 11] (citation omitted).

In *Starks*, 459 S.W.2d 249, the defendant was convicted of tampering. At trial, a police officer testified that after he arrested the defendant and gave him a *Miranda* warning he questioned the defendant about some guns and the defendant answered. At that point in the direct examination, the arresting officer was asked, "Did [the defendant] say anything further?" The officer answered, "No, sir, that is all he would say." *Id.* at 251–52. On appeal, the defendant's claim that the question violated his constitutional right to remain silent was rejected by our supreme court. Quoting from *Starks*:

> In the case before us the officer did not accuse Starks of the crime of tampering with the automobile and Starks was not questioned with reference thereto.

The inquiry related solely to where he had come from, what he was doing there, the guns and why the pistol was cocked. Starks did not stand mute in the face of an accusation because there was no accusation.... There was no failure to volunteer an exculpatory statement as in State v. Stuart, supra; no refusal to answer questions as in State v. Phelps, supra; no refusal to make a statement as in State v. Vainikos, supra.... [N]o effort was made by the police officers to confront him with any accusations of guilt of tampering with the motor vehicle or the incriminating evidence of the broken window, scratches around the ignition switch, etc. *This is not a case where an accused clams up in the face of a charge of guilt, made under circumstances calling imperatively for an admission or denial.* Starks did not "say anything further"—that was all he had to say—because the subject was dropped; the inquiry ended; no further questions were asked; the subject of tampering was not broached, and both the officer and Starks fell silent while awaiting the arrival of the other police officers.

459 S.W.2d at 252[8] (emphasis added).

In *Green,* 798 S.W.2d 498, prior to his arrest and being advised of his *Miranda* rights, the defendant told an officer that he believed his girl friend had died from a heart attack and had fallen off the back porch of her home. The officer examined the deceased's clothing for dirt or sand and, finding none, placed the defendant under arrest and read him his *Miranda* rights. 798 S.W.2d at 500. At trial, the officer was asked, "Did he talk with you at all after having had those *Miranda* rights read to him?" The officer answered, "No, sir." 798 S.W.2d at 502 n. 2.

Relying primarily on *Starks* and *Battles,* we rejected defendant Green's argument that the question violated his rights against self-incrimination, concluding, "Under the circumstances, and in the context in which it was uttered, no inference of guilt of the crime could reasonably have been drawn from the officer's answer that defendant did not talk with him 'after having had

those *Miranda* rights read to him.'" *Green,* 798 S.W.2d at 503 (quoting *Starks,* 459 S.W.2d at 252–53).

In the case now before us, the defendant relies, in part, on *Stuart,* 456 S.W.2d 19, and *Benfield,* 522 S.W.2d 830, to support his argument. That reliance is misplaced. In each of those cases the arresting officers testified that, following the arrests of the respective defendants, they found property in the possession of the defendants which the officers identified at trial as stolen. In *Stuart,* a juror asked, "Did either one of these guys claim that money?" and the officer replied, "Not to my knowledge. To the best of my knowledge, no." 456 S.W.2d at 22. Under those circumstances, the *Stuart* court held:

In the instant case no question was asked of the defendant or statement made in his presence. Here, by his silence, he failed merely to deny or explain his possession of the property by claiming it as his own when he had an opportunity to do so while under arrest. We now hold that an accused's failure to volunteer an exculpatory statement is not admissible as an admission; that it may not be shown that by his silence he failed to deny or explain while under arrest an incriminating fact as to which no question was asked. The admission of such evidence constitutes an invasion of an accused's constitutional rights.

456 S.W.2d at 22 (citations omitted).

In *Benfield,* after the officer testified he had read defendant his rights, the following exchange occurred:

Q. (To the officer) Did he make any statements?

A. No.

Q. At that time?

A. No, he did not.

522 S.W.2d at 834. The *Benfield* court quoted *Stuart* and relied on *Stuart* to reach a similar result.

In the instant case, the record does not reveal any incriminating facts with which the defendant was confronted when officer Fowler arrested him, no facts which might incriminate him if he remained silent, and

no facts which he needed to deny or explain. The record is devoid of any evidence that the stolen wheels were in the defendant's pickup truck or otherwise in his possession. Before his arrest, the defendant told Fowler that the green and white pickup truck was his and that he had been in the Gas Plus store for 30 minutes. There is no evidence that an inquiry was made by Fowler to the defendant (or to anyone else in the defendant's presence) about the blue pickup truck, the tires and wheels removed from the blue truck, the C & E Auto Sales lot, the possible presence of the defendant or his companions on the C & E lot or near the blue pickup, or the possible presence of the defendant's green and white pickup near the C & E lot. The subject of the tampering was never broached with the defendant or with others in his presence. After Fowler read the *Miranda* rights to the defendant, the inquiry ended; no further questions were asked. This is not a case where the defendant "clammed up" in the face of a charge of guilt, made under circumstances calling imperatively for an admission or denial. *See Starks*, 459 S.W.2d at 252. Rather, the record shows that, after the defendant's arrest, there was no questioning and no discussion about the tampering charge or anything else. All that appears from this record is that the officer and the defendant fell silent following the arrest and *Miranda* warning. Under these circumstances, no inference of guilt of the crime could reasonably have been drawn from the prosecutor's question to officer Fowler or Fowler's answer. We hold that the defendant's assignment of error in Point I is without merit.[3]

*Reasonable Doubt Definition*

■ The defendant's second point is that the trial court erred when it submitted

Instruction No. 4, patterned after MAI–CR3d 302.04, which defines "proof beyond a reasonable doubt" as "proof that leaves you firmly convinced of the defendant's guilt." Because no objection to Instruction 4 was lodged at trial, the defendant requests plain error review pursuant to Supreme Court Rule 30.20. Relying on *Cage v. Louisiana*, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990), he argues that instructing the jury with the foregoing definition of "proof beyond a reasonable doubt" rose to the level of manifest injustice or miscarriage of justice because the instruction allowed the jury to find guilt based on a degree of proof below that required by the due process clause. In making his request for plain error review, the defendant acknowledges that our supreme court has rejected the same challenge to the standard of proof instruction in cases where the claim was preserved for appellate review. *See State v. Griffin*, 818 S.W.2d 278, 282 (Mo. banc 1991).

Because the defendant's point, even if preserved, would be governed by *Griffin* and not by *Cage*, we expressly refuse to review the defendant's claim about the standard of proof instruction. The defendant waived his claim of error by his failure to preserve the error; we decline to exercise our discretion to review under the plain error rule.

We affirm.

PARRISH, C.J., and CROW, P.J., concur.

---

**3.** Additional cases relied on by the defendant include *State v. Richardson*, 724 S.W.2d 311 (Mo.App.1987) (arresting officer was asked if the defendant ever said the marijuana in his possession was not his; held, reversible error); *State v. Roth*, 549 S.W.2d 652 (Mo.App.1977) (new trial required in murder case in which the defendant claimed self-defense where the prosecutor, in closing, argued that defendant had not told arresting officers about his self-defense claim); and *Nolan*, 595 S.W.2d 54 (in rape case,

it was reversible error to cross-examine the defendant about when he first told the police that the victim had consented to intercourse). These cases are distinguishable from the instant case because in each the state, by the objectionable inquiry, showed that an accused, while under arrest, had failed to volunteer an exculpatory statement or, by his silence, had failed to deny or explain an incriminating fact. That situation does not attend this case.