STATE of Missouri, Respondent,

v.

Buddy L. PRINCE, Appellant.

Buddy L. PRINCE, Appellant,

v.

STATE of Missouri, Respondent.

Nos. 18732, 19505.

Missouri Court of Appeals,
Southern District,
Division Two.

June 20, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 10, 1995.

Application to Transfer Denied
Sept. 19, 1995.

Emmett D. Queener, Office of the State Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Becky Owenson Kilpatrick, Asst. Atty. Gen., Jefferson City, for respondent.

PARRISH, Judge.

Buddy L. Prince (defendant) was charged and convicted, following a jury trial, of two counts of stealing, § 570.030, RSMo1986, a class C felony.[1] He was sentenced to imprisonment for a term of 7 years for each count. The sentences were ordered served consecutively.

Following his convictions, defendant filed a motion for post-conviction relief pursuant to Rule 29.15. Counsel was appointed and an amended motion filed. That motion was denied without an evidentiary hearing.

Defendant appeals the convictions in his criminal case (No. 18732) and the judgment

---

1. Defendant was charged with two additional counts of felony stealing. He was found not guilty of those charges.

denying his Rule 29.15 motion (No. 19505). Those appeals were consolidated pursuant to Rule 29.15(*l*). This court affirms both judgments.

The two counts of stealing of which defendant was found guilty involved thefts of cattle. Count I involved cattle stolen from James Proctor. Count II involved cattle stolen from J.C. Meador. Both thefts occurred in Polk County, Missouri. The case was tried in Webster County following change of venue.

J.C. Meador saw his cattle about 6:00 p.m., August 21, 1991. The next day 17 head were missing. He contacted the Polk County Sheriff's office and reported the cattle stolen.

Personnel from the sheriff's office went to an area on Mr. Meador's property where a corral, a shed and barn were located. The area was near the center of a "rolling hill ranch type farm" in an otherwise uninhabited area. There were tire marks near the shed that did not resemble the tires on any vehicle Mr. Meador or his family used.

The cattle had been loaded through a small doorway from the shed on the Meador property. A leather-braided knob was found in the dirt inside the small doorway. It did not belong to Mr. Meador.

On August 23, 1991, defendant sold 12 head of cattle through the Norwood Producers Auction Yard in Norwood, Missouri. The auction sign-in slip bore the name "B.L. Prince." The owner was listed as "Lancaster Sales." The check for the sale of the cattle was payable to the order of Lancaster Sales. It was negotiated with the endorsement, "Lancaster Sales, Buddy Prince."

On August 24, 1991, defendant sold 4 head of cattle at the Ava Stockyard in Ava, Missouri. The owner was identified as "Lancaster Sales." One cow, a Simmental heifer, was sold "as is," indicating the heifer had a disability—"there was something wrong with it. It either had a limp; it was sick."

One of the cows stolen from Mr. Meador was described by him as a "quinine cow," a "ne'er-do-well one" he was planning to send to the sale barn. He explained it was smaller than the other cattle; "it just wouldn't fit.... [I]t's like a whole bunch of tall people and then a little short one or something like that. Just didn't look good." The "quinine cow" was a Simmental-cross heifer.

On December 7, 1991, James Proctor discovered 26 head of cattle missing from a Polk County farm he rented. He had seen his cattle there the day before. He reported them stolen.

There was a loading chute near a road that ran by the property Mr. Proctor rented. Personnel from the sheriff's department observed tire tracks that appeared to be from a trailer that had been backed up to the chute. They photographed the tire tracks and measured their widths. The deputy sheriff who took the measurements concluded, "It would have been a six-foot wide trailer." They also measured the distance from the back tire tracks to the chute to determine the amount of overhang of the trailer. The distance from the rear tires on the trailer to the chute was 8 feet.

The tread marks at the Proctor property revealed that the trailer had a "three-axle, single tire—or six tire" configuration. Each tire had different tread patterns and different tread widths. The characteristics of the trailer were broadcast to other law enforcement personnel in the area where the theft occurred.

On December 16, 1991, Polk County authorities received a report that a trailer matching the description of the one they were seeking was parked in a parking lot adjacent to the Interstate Inn in Springfield, Missouri, in Greene County. Sheriffs' personnel from Polk County and Greene County went to the Interstate Inn. They examined the trailer. It had a "gooseneck" style hitch. Its license was registered to Lancaster Sales.

Deputies examined the ground for tire marks from the vehicle that had towed the trailer to the parking lot. They found tire marks with a "knobby-looking design." A truck on an adjacent parking lot had a gooseneck trailer hitch. The tread on its tires matched the tread patterns in the tracks beneath the hitch assembly of the trailer. According to vehicle registration records, the truck was registered to Buddy L. Prince.

The address for Lancaster Sales, according to the license registration for the trailer, and for Buddy L. Prince, according to the license registration for the truck, was the same post office box number in Springfield, Missouri.

Defendant was in his room at Interstate Inn. He was arrested. Before leaving his room, he placed a call and requested someone to pick up his personal belongings at the motel. He handed his truck keys to one of the deputy sheriffs.

The law enforcement officers seized defendant's truck and the trailer. They conducted an inventory search of the truck. They found two livestock whips, an electric cattle prod and a set of bolt cutters in the truck. One of the livestock whips had a knob broken off the end of its handle.

The truck and trailer were removed from the motel property. Polk County deputies then returned to the motel and watched the room defendant had occupied. They observed an individual, later identified as Lee Choate, defendant's brother-in-law, enter the room and remove a box, a briefcase and what appeared to be a gun case. Mr. Choate placed the items in a car and drove away.

The officers followed him from Greene County to Bolivar in Polk County where they stopped him. They requested him to follow them to the Polk County Sheriff's office. He did so. While at the sheriff's office, he gave the officers permission to search his car.

The officers found the briefcase that had been removed from defendant's room. It contained a checkbook. Its checks were imprinted with the name and address, "Buddy Leon Prince d/b/a Lancaster Sales Company, Post Office Box 8311, Springfield, Missouri." The checks were for an account at Boatmen's Bank in Springfield, Missouri. The account had been opened August 13, 1991.

An employee of the Ava Stockyard at Ava, Missouri, testified, based on the stockyard's business records, that 26 head of cattle were sold by an owner identified as Lancaster Sales on December 7, 1991. The buyers of the cattle were identified.

James Proctor went with a Polk County deputy sheriff to locations where the buyers had taken the cattle. Mr. Proctor had marked his cattle by placing notches in the lower part of their left ears. He identified 6 head as cattle that were stolen from his Polk County farm. Each had notches in their left ears.

Prior to trial defendant filed a motion to suppress evidence directed to items seized from his truck in Greene County and items seized in Polk County from Lee Choate's vehicle. The trial court denied the motion.

Defendant's first point on appeal is directed to the denial of the motion to suppress evidence. It is divided into two parts, a) and b). Part a) contends there was no probable cause to seize and search defendant's truck "because there was no reason to believe that the truck had been involved in a crime." Part b) asserts the state's seizure of defendant's briefcase from Lee Choate's car was improper because the car was "searched without a search warrant and without consent."

 "Generally, impoundment of a vehicle and a subsequent inventory, without a warrant, is justified only if 'the vehicle is associated with the commission of an offense or the arrest of the defendant or if the location or condition of the vehicle is such that the safety or interest of the public requires its removal and police intervention is the only reliable option.'" *State v. Walker,* 755 S.W.2d 404, 408 (Mo.App.1988), *quoting State v. Holt,* 695 S.W.2d 474, 477 (Mo.App. 1985). "Judicial determination of whether a warrantless search is constitutional depends on the particular facts in each case." *State v. Gibeson,* 614 S.W.2d 14, 15 (Mo.App.1981).

Defendant argues that the state's authority for seizing and inventorying his truck depended on the truck being associated with commission of an offense and that the evidence did not support that conclusion. This court does not agree.

The vehicle registrations of the trailer and truck were checked before defendant was arrested. The trailer was registered to Lancaster Sales. The truck was registered to defendant. The address for Lancaster Sales and defendant was the same post office box number in Springfield, Missouri. The tread

patterns on the tires on the trailer matched the tracks at the lot in Polk County where James Proctor's cattle were stolen. The tread patterns also matched tracks found at the Meador property.

When they examined the trailer at the Interstate Inn parking lot, law enforcement officers observed tire tracks beneath the gooseneck hitch assembly of the trailer. A truck that was registered to defendant was parked in an adjacent parking lot. Its tires appeared to have the same tread patterns as the tracks under the gooseneck hitch assembly of the trailer. The truck had a gooseneck trailer hitch assembly. No other vehicle at the site had that type of trailer hitch. There was sufficient evidence for the law enforcement officers to conclude that the trailer and truck had been associated with the theft of the Meador cattle and the Proctor cattle.

The law enforcement officers who arrested defendant were authorized to seize the truck. They were permitted to inventory its contents in order to safeguard the items and protect themselves from claims of lost property. *State v. Valentine,* 584 S.W.2d 92, 98 (Mo. banc 1979); *State v. Williams,* 654 S.W.2d 238, 241 (Mo.App.1983).

Defendant also argues that the seizure of his briefcase and its contents from Mr. Choate's car was illegal; that the seizure was the product of a search "without a search warrant and without consent." Defendant contends that by arranging for Lee Choate to pick up his briefcase and other items from the Interstate Inn, he "had a legitimate expectation of privacy to the briefcase and its contents in Choate's car."

"[I]n order for defendant's Fourth and Fourteenth Amendment rights to be violated or for defendant to have standing to assert a violation of Art. I, § 15, Mo. Const., defendant must have a legitimate expectation of privacy in the place or thing searched." *State v. Eidson,* 701 S.W.2d 549, 553 (Mo. App.1985). Defendant had no property or possessory right or interest in Mr. Choate's automobile. He had no expectation of privacy with respect to it. *State v. Rellihan,* 662

S.W.2d 535, 542 (Mo.App.1983). Point I is denied.

Point II is directed to testimony at trial that produced a request for mistrial. Polk County Deputy Sheriff Carl Wagoner was asked the following questions and gave the following answers:

Q. (By the prosecuting attorney): Okay. Tell us what transpired as you went into the room—the next thing that happened as you went into the room and talked to Mr. Prince.

A. I advised Mr. Prince why we were there, and I requested Deputy Hoskins to advise him of his Miranda rights.

. . . . .

Q. All right. And was Mr. Prince placed under arrest during this time?

A. Shortly after he was advised of his right, yes, sir.

. . . . .

Q. Okay. Was Mr. Prince talked to by yourself?

A. Yes, he was.

Q. Did you advise him of what you were there for?

A. Yes, I did.

Q. All right. What did you say to him?

A. I advised him that we were investigating a cattle theft and that—the next point was read him his right and asked to talk to him about it.

Q. Okay. And were there any discussions had with Mr. Prince?

A. Not other than him stating that he didn't feel like that he could talk to us about it.

Defendant's attorney then objected on the basis that "[defendant's] constitutional right, as under the Fifth Amendment of the United States, has been violated by them going into the fact that he refused to talk to them after being informed of his Miranda rights." He requested that the prosecuting attorney be instructed not to go any further; that the jury be instructed "to disregard it." He also requested the trial court to declare mistrial. The trial court denied the request for mistrial. The trial judge told the jury, "Jury will

be instructed to disregard the officer's last statement."

Defendant argues that the trial court erred in denying the request for mistrial; that the trial court abused its discretion because the ruling violated defendant's right to remain silent.

[T]he silence of an accused while under arrest is not admissible against him. *State v. Howell,* 838 S.W.2d 158, 161[2–5] (Mo. App.1992). The state may not use post-arrest silence either as affirmative proof of a defendant's guilt or to impeach his testimony. *Id.* It may not be shown that an accused failed to volunteer an exculpatory statement, nor may it be shown that, by his silence, he failed to deny or explain, while under arrest, an incriminating fact about which no question was asked. *Id.* The admission of such post-arrest silence constitutes an invasion of an accused's constitutional rights. *Id.*

*State v. Hlavaty,* 871 S.W.2d 600, 606 (Mo. App.1994).

■ *Hlavaty* also explains the relative roles of the trial and appellate courts in considering and reviewing requests for mistrial. "The trial court has the opportunity to observe the incident giving rise to the request for a mistrial and is in a better position than an appellant [sic] court to evaluate its prejudicial effect, thus our review extends to determining whether as a matter of law the trial court abused its discretion in refusing to declare a mistrial." *Id., citing State v. Feltrop,* 803 S.W.2d 1, 9 (Mo. banc) *cert. denied,* 501 U.S. 1262, 111 S.Ct. 2918, 115 L.Ed.2d 1081 (1991).

■ *Howell* and *Hlavaty* held that the respective trial courts did not err in denying requests for mistrial. Here, as in those cases, there was no testimony that the defendant's silence followed a confrontation with facts that might incriminate him if he remained silent or which he needed to deny or explain. The record in this case does not reveal that defendant was asked questions about thefts he was accused of committing.

Likewise, as in *Hlavaty,* the trial court in this case admonished the jury to disregard the witness' statement. This court concludes that the trial court did not abuse its discretion in denying defendant's request for mistrial. Point II is denied.

Point III is directed to the denial of defendant's Rule 29.15 motion. Defendant contends the motion court's findings of fact and conclusions of law were insufficient; that they were not specific with respect to each allegation he raised. He argues that this deprives him of the opportunity for meaningful appellate review.

■ Rule 29.15 requires motion courts to make findings of fact and conclusions of law on all issues presented so that appellate courts may engage in meaningful review of post-conviction proceedings. *State v. Hamilton,* 817 S.W.2d 8, 11 (Mo.App.1991). There is, however, no established format that the motion court must follow.

After defendant filed two premature *pro se* motions—one *pro se* motion was filed approximately six months before the trial transcript was filed in the direct appeal, and a second was filed after the trial transcript was submitted to this court but before it had been approved by counsel—counsel was appointed to represent him.[2] His appointed counsel filed an amended motion that undertook to include, without additional explanation, grounds for relief stated in defendant's *pro se* pleadings. The motion court undertook to address the issues by findings of fact and conclusions of law directed, by paragraph numbers, to each paragraph in defendant's "second" *pro se* motion and amended motion.

■ Defendant's "first" *pro se* motion attempted to identify five "POINTS OF ISSUE" followed by a list of case and statute citations and three typed pages of narrative characterized as "STATEMENT OF FACTS AND ARGUEMENT [sic]." A reading of the five "POINTS OF ISSUE" reveals they are either conclusory claims of ineffective assistance of counsel that do not warrant consideration, *see State v. Hamilton,* 817

---

**2.** Rule 29.15(b) prescribes the time for filing a motion pursuant to that rule. It provides, "If an appeal of the judgment sought to be vacated, set aside or corrected was taken, the motion shall be filed within thirty days after filing of the transcript in the [direct] appeal...."

S.W.2d at 12, or claims of trial court error not cognizable in a Rule 29.15 motion, *see State v. Clark*, 859 S.W.2d 782, 789 (Mo.App. 1993).

In reviewing the "second" *pro se* motion, the motion court addressed 19 claims asserted by defendant. The motion court concluded that 18 of those claims were allegations of trial court error that would be subject to determination by direct appeal. The findings of fact and conclusions of law, with respect to those issues, are sufficient to enable appellate review.

The remaining claim in the second *pro se* motion is a multi-page narration of complaints directed to defendant's trial attorney's conduct of the criminal trial. The motion court concluded that the "allegations were refuted by the Court record."

Mindful that there was no evidentiary hearing on the Rule 29.15 motion, and that there is no issue on appeal directed to the failure to conduct an evidentiary hearing, the trial court's assessment is sufficient to permit appellate review.

Eight issues were raised in the amended motion filed by defendant's appointed counsel. The motion court's findings and conclusions included determinations that four of the issues were the "subject matter for an appeal and not proper subject matter for [Rule 29.15] proceedings."

Defendant makes no suggestion as to how any of these four issues would be cognizable in a post-conviction proceeding. This court's gratuitous review reveals two possible issues for review by direct appeal rather than by means of post-conviction motion. *State v. Clark, supra.* The other two issues state, generally, that defendant's trial counsel failed to provide the type of "zealous representation" required by constitutional mandate. They are conclusory. They are not factual allegations.

The motion court held that three of the remaining four issues "were refuted by the Court record." All were allegations that additional evidence existed that could have been presented at defendant's criminal trial. There was nothing presented to the motion court that substantiated the allegations.

Considering the meager record before the motion court, its findings and conclusions on these issues are sufficient for appellate review.

■ The remaining allegation in the amended motion is directed to the time constraints that are part of Rule 29.15. The motion court concluded that this issue was not one appropriate for it to decide. That conclusion is erroneous. Regardless, in that time constraints imposed by Rule 29.15 have been scrutinized and consistently upheld, it is unnecessary for this court to remand to permit further consideration. *See Day v. State*, 770 S.W.2d 692, 695 (Mo. banc), *cert. denied sub nom. Walker v. Missouri*, 493 U.S. 866, 110 S.Ct. 186, 107 L.Ed.2d 141 (1989).

Although the motion court's findings of fact and conclusions of law are not a model of completeness, neither are the rambling narratives presented by defendant's post-conviction motions. Point III is denied.

In No. 18732, defendant's judgment of conviction is affirmed. In No. 19505, the judgment denying defendant's Rule 29.15 motion is affirmed.

GARRISON, P.J., and PREWITT, J., concur.

